DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Nicholas Jamison, appeals the decision of the Medina County Court of Common Pleas, which found appellant guilty of assault on an emergency worker and sentenced him accordingly. This Court affirms.
 I. {¶ 2} In February of 2003, appellant was involved in a car accident where he drove through a stop sign at a T-intersection and crashed into a tree in an embankment. Appellant's truck was the only vehicle involved in the accident. Passersby removed appellant from his truck and called emergency services to come help. Firefighters arrived at the scene to help appellant, followed shortly thereafter by a paramedic truck. Appellant had some visible injuries and the paramedics determined his injuries required medical attention. The paramedics, accompanied by one firefighter, placed appellant on a backboard, put a c-collar on him to immobilize his neck, and placed him in the ambulance to transport to the hospital. On route to the hospital, while the paramedics were on either side of appellant providing medical care and preparing to give appellant an IV and a blood sugar test, appellant punched one of the Emergency Medical Technicians ("EMT") in the nose with his right hand The EMT fell backwards and sustained an injury to her nose, as well as broken glasses from the incident.
 {¶ 3} The ambulance arrived at the hospital shortly thereafter, and both appellant and the EMT were treated in the emergency. Appellant was arrested at the hospital and taken to jail that night. A Medina County Grand jury later indicted appellant on a charge of assault on an emergency worker. The case went to trial and a jury convicted appellant of the same. The trial court later sentenced appellant to six months in the Medina County Jail with credit for time served, 5 years of community control with specific sanctions, and ordered appellant to pay court costs and restitution to the victim.
 {¶ 4} Appellant timely appealed, setting forth four assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"Where a person at the scene of an accident is found to be visibly injured, bleeding from a head wound, confused and combative and the paramedics determine that, because of his condition, he is incapable of knowingly refusing emergency medical treatment, as a matter of law he cannot be capable of knowingly striking a paramedic who attempts to stick an iv needle in his arm. under these circumstances a conviction for violation of r.c. 2903.13(a)(c)(3) is contrary to law and must be reversed."
 {¶ 5} In his first assignment of error, appellant argues the State failed to present sufficient evidence to support his conviction. This Court disagrees.
 {¶ 6} "The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. This Court must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 7} Appellant was convicted of assault on an emergency worker in violation of R.C. 2903.13(A)(C)(3), which provides: "No person shall knowingly cause or attempt to cause physical harm to another * * * [and if] the victim of the offense is * * * a person performing emergency medical service, while in the performance of their official duties, [the offense] is a felony of the fourth degree."
 {¶ 8} As a preliminary matter, this Court notes that appellant claims he cannot be convicted of a violation of R.C.2903.13(A)(C)(3) because the EMTs gave testimony that, on the night in question, they believed appellant could not knowingly refuse medical treatment from them. Appellant argues that if he could not knowingly refuse medical treatment from the firefighters and the EMTs, then appellant could not knowingly assault Ms. Whipple. This Court disagrees. R.C. 2901.22(B) states, in relevant part: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." Appellant's inability to understand and appreciate the possibility that he could have sustained serious injuries from his accident, or that any movement of his neck or back could aggravate or cause further injuries to himself, does not preclude him from the ability to be "aware that his conduct will probably cause a certain result or will probably be of a certain nature", i.e., if he punches a person with his fist, that action will probably hurt them and be considered an assault. Though the EMTs felt appellant could not "knowingly" refuse their medical treatment, this Court finds that such testimony does not evidence that appellant could not knowingly assault Ms. Whipple pursuant to R.C. 2901.22(B).
 {¶ 9} At trial, sufficient evidence was presented to submit to the jury that appellant knowingly caused physical harm to an EMT while she was in the performance of her official duties. The State provided undisputed testimony that (a) Almeda Whipple is an EMT who provided medical care to appellant and (b) while Ms. Whipple was providing medical care to appellant, he caused her physical harm by punching her in the nose with his right hand The State also provided several witnesses to testify as to the remaining disputed element that appellant "knowingly" punched Ms. Whipple.
 {¶ 10} Jeremy Eby, a firefighter who responded to the scene of appellant's accident, testified that he was asked to assist the EMTs by riding along in the ambulance and helping them control the appellant. Mr. Eby testified that the appellant was not cooperating with the EMTs and Mr. Eby had to personally hold appellant's neck and head in the ambulance because appellant kept removing the c-collar and other materials they put on him to protect his neck and head. Mr. Eby stated the EMTs were trying to check appellant for further injuries and appellant continued to be aggressive and combative to them. Mr. Eby testified that he observed appellant tell Ms. Whipple that he had something to tell her and moments later appellant hit Ms. Whipple. Mr. Eby explained that all of a sudden appellant raised himself up off the backboard and punched Ms. Whipple in the bridge of her nose with his right fist, causing her to fall backward in the ambulance. Mr. Eby testified that appellant then turned over on his stomach and as they were trying to turn him over and stabilize him, appellant started cussing at Mr. Eby and attempted to bite his leg.
 {¶ 11} Mr. Eby also testified that appellant had been cooperative and coherent with him right before they entered the ambulance. Mr. Eby explained that appellant did not refuse medical treatment from him. Mr. Eby stated that appellant had answered his questions and chatted with him in a civil manner, but then became uncooperative with Mr. Eby in the ambulance.
 {¶ 12} Denise Kisilewicz, the EMT who treated appellant along with Ms. Whipple, provided corroborating testimony that appellant was aggressive and combative in the ambulance as they tried to provide him medical care. Ms. Kisilewicz testified that she was on appellant's right side preparing to get a blood sugar reading from him and she had his right arm in her hand She stated that all of a sudden appellant raised himself and brought his right arm up, which knocked her hand out of the way, and punched Ms. Whipple in the nose. Ms. Kisilewicz testified that appellant's punch broke Ms. Whipple's glasses so she could not see well and caused a cut on her nose that was bleeding. She further stated that appellant had specifically told Ms. Whipple that he did not hit women. Ms. Kisilewicz also corroborated Mr. Eby's testimony that, although he was not cooperating with them, appellant was coherent and was able to give appropriate answers to the questions the EMTs asked him. She also testified that appellant did not refuse medical treatment from her.
 {¶ 13} Ms. Whipple also testified at appellant's trial. She stated that when she arrived at the accident scene appellant was alert and coherent, but he was arguing with the firemen who were helping him. Ms. Whipple testified that they began to give appellant medical care and he was very aggressive and uncooperative with their efforts. She stated that appellant kept removing the c-collars and other materials they put on him to stabilize his neck and head and he kept cussing at them as they were trying to render medical services to him. Ms. Whipple stated that they asked Mr. Eby to ride with them to hold appellant's neck so they would be able to do their jobs and check that appellant did not have any further injuries or medical problems as a result of his accident. Ms. Whipple testified that although appellant kept arguing with her during the ambulance ride, he coherently answered her medical and informational questions to him. Ms. Whipple testified that appellant did not refuse medical treatment from her.
 {¶ 14} During the trip to the hospital, appellant began making combative movements and, at one point, Ms. Whipple told appellant to please not hit them and appellant responded, "Don't worry. I would never hit a woman." She testified that she was on appellant's left side and she was leaning down toward him, preparing to put an IV in his left arm, when appellant hit her and she went flying backward in the ambulance. Ms. Whipple stated that she responded to appellant's assault on her by telling him "Dude, you're going to jail." She testified she had no doubt appellant knowingly hit her, saying "I felt that he did it intentionally. He had already been thinking it apparently when he said, `Don't worry. I'd never hit a woman.'"
 {¶ 15} After a thorough review of the record, this Court finds that sufficient evidence was presented that appellant knowingly caused harm to Ms. Whipple and, therefore, to support his conviction of assaulting an emergency worker. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"The trial court committed reversible error in allowing the state to introduce, over objection, opinion testimony related to alcohol and thus prejudice the jury that alcohol was the cause of the defendant's collision and subsequent injury."
 THIRD ASSIGNMENT OF ERROR
"The court committed prejudicial error when it allowed the state to speculate on the issue of the defendant's injuries without producing any medical evidence."
 {¶ 16} In his second assignment of error, appellant argues the trial court erred by overruling the defense counsel's motion in limine to preclude the State from introducing State Trooper Michael Paris' testimony at trial. Specifically, appellant argues that Trooper Paris' testimony was more prejudicial than probative as it involved allegations that alcohol played a substantial role in appellant's accident and subsequent behavior with Ms. Whipple. In his third assignment of error, appellant argues the trial court erred in allowing the State to question its witnesses concerning the duration of time appellant was at the hospital the night of the incident. Specifically, appellant asserts the State provided no medical evidence, but instead asked the jury to speculate on facts not in evidence. This Court disagrees.
 {¶ 17} It is well settled that a trial court enjoys broad discretion in the exclusion and admission of evidence and this Court will not overturn an evidentiary ruling absent an abuse of discretion resulting in material prejudice. State v. Martin
(1985), 19 Ohio St.3d 122, 129. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 18} In the instant case, appellant asserts that Trooper Paris should not have been allowed to testify at trial because his testimony involved statements connecting alcohol with appellant's behavior. In his brief, appellant states that "[i]t is beyond question that any evidence of alcohol consumption by a party or witness is inflammatory and unfairly prejudicial" and, therefore, the trial court should not have allowed the jury to hear any such evidence. This Court does not agree. Trooper Paris testified that he smelled the odor of alcohol when he approached the ambulance to tell appellant to cooperate with the EMTs who were providing medical treatment to him. This evidence was relevant and admissible to allow the State to provide an alternate explanation for appellant's peculiar, combative behavior on the night in question. See Ohio Evid.R. 401. Appellant's defense at trial was that his behavior was the result of a brain injury, so the trial court was proper in allowing the State to introduce evidence that appellant's behavior was instead due to his intoxication and/or desire to avoid prosecution for a D.U.I. charge. See Id. In fact, the trial court clearly states, on the record, his explanation as to why he overruled appellant's motion in limine and objections to Trooper Paris testifying at trial:
"The Court is going to overrule the objection for the reason that I've indicated previously in response to the motion in limine. There apparently are competing ideas about this Defendant's actions and why he acted in the way that he did. Counsel for the Defendant believes that it was the result of a brain injury; he was in and out of consciousness and it was this brain injury that caused his lack of voluntariness of knowledge.
"Counsel for the State believes that this Defendant consumed some alcoholic beverages that caused this Defendant's activities.
"The Court is going to expand the period of time in which the facts of this case are going to come in, mostly because of, frankly, the defense, the defense believing there was a brain injury that did this, to permit the State of Ohio to have some testimony from this officer who had contact prior to and after the injury. So for the record, any other reviewing court can know that is the reason why this Court's doing what it's doing."
 {¶ 19} Appellant further asserts the State should not have been allowed to ask its witnesses any questions concerning the duration of time appellant was in the hospital on the night in question because the State did not provide expert medical testimony concerning the length of time appellant was treated. Appellant argues that the State's questioning on this subject matter was unfairly prejudicial to appellant at trial. This Court does not agree. The State's witnesses were able to corroborate the fact that appellant was treated in the hospital for no longer than one hour the night of his car accident. This Court agrees that, although the witnesses' testimony concerning the length of time appellant spent at the hospital is not conclusive, it is both relevant and admissible to the issue of the severity of his injuries, i.e. his defense of a brain injury causing him to assault Ms. Whipple. See Ohio Evid.R. 401. Moreover, the witnesses were providing testimony of their personal observations at the hospital because they remained there while Ms. Whipple was treated for her injury; they did not testify as to their opinion of what injuries appellant conclusively received from his accident that would be inadmissible in the case.
 {¶ 20} In light of the above facts and applicable law, this Court concludes the trial court did not abuse its discretion when it allowed the State to both introduce the testimony of Trooper Paris and to question its witnesses concerning the duration of time appellant was at the hospital for treatment of his injuries. Appellant's second and third assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR
"The defendant's conviction was a result of passion and prejudice caused by the prosecution's improper and unfair inflammatory closing argument that unfairly prejudiced and inflamed the jury and should be reversed."
 {¶ 21} In his fourth assignment of error, appellant argues that prosecutorial misconduct, specifically statements made during the State's closing argument, unfairly prejudiced appellant, inflamed the jury and consequently denied appellant a fair trial. Appellant asserts that, absent the improper prejudicial closing argument by the State, the jury would not have found him guilty of assaulting Ms. Whipple. This Court disagrees.
 {¶ 22} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. See State v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors "including most constitutional violations." Id., quoting United States v.Hasting (1983), 461 U.S. 499, 508-509, 76 L.Ed.2d 96, certiorari denied (1985), 469 U.S. 1218. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. Statev. Carter (1995), 72 Ohio St.3d 545, 557.
 {¶ 23} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant."State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47, discretionary appeal not allowed by State v. Overholt,100 Ohio St.3d 1472, 2003-Ohio-5772, citing State v. Smith
(1984), 14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v. Hill (1996), 75 Ohio St.3d 195, 204,1996-Ohio-222, citing Donnelly v. DeChristoforo (1974),416 U.S. 637, 647, 40 L.Ed.2d 431. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct; the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78,1994-Ohio-409.
 {¶ 24} In the instant case, appellant alleges that during the State's closing argument, the prosecutor argued facts not in evidence and characterized the appellant in terms designed to inflame the jury by repeatedly referring to appellant's use of alcohol and stating that appellant lacked any indicia of a brain injury. Appellant also argues that the prosecutor improperly told the jury that appellant's attorney was intentionally making "untrue" statements to them.
 {¶ 25} The Ohio Supreme Court has granted prosecutors wide latitude in closing argument, finding that any prosecutorial misconduct therein must be considered in the light of the whole case. State v. Maurer (1984), 15 Ohio St.3d 239, 266. It is well settled that the conduct of a prosecutor during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. State v. Papp (1978),64 Ohio App.2d 203, 211; State v. Wade (1978), 53 Ohio St.2d 182, 186; Statev. DeNicola (1955), 163 Ohio St. 140, 148; Scott v. State
(1923), 107 Ohio St. 475, 490-491. Although this Court acknowledges that the prosecutor did make improper statements during her closing argument, those statements did not prejudice a substantial right of appellant and, therefore, did not deprive him of a fair trial.
 {¶ 26} This Court notes that closing arguments are not evidence. State v. Frazier (1995), 73 Ohio St.3d 323, 338. The trial court so instructed the jury in the present case, stating: "Now, closing arguments are not evidence. You've heard all the evidence you're going to hear. The attorneys are now going to give you their perspective of this particular case." Moreover, review of the trial transcripts demonstrates that the prosecutor's remarks during closing argument amount to harmless error as the jury considered extensive testimony from witnesses which led them to find appellant guilty of knowingly causing physical harm to Ms. Whipple while she was providing emergency medical treatment to appellant. This Court finds that appellant would have been convicted absent the prosecutor's improper statements during closing argument.
 {¶ 27} Appellant's fourth assignment of error is overruled.
 III. {¶ 28} Appellant's four assignments of error are overruled. Accordingly, the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
Baird, J. Slaby, J. concur.