[Cite as *State v. Harris*, 2012-Ohio-2973.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 11CA009991 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MICHAEL HARRIS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 07CR074412 |

DECISION AND JOURNAL ENTRY

Dated: June 29, 2012

CARR, Judge.

{¶1} Appellant Michael Harris appeals his conviction in the Lorain County Court of Common Pleas. This Court reverses and remands for a new trial.

I.

{¶2} Harris was charged with several crimes against his adult step-daughter, including two counts of kidnapping with sexual motivation specifications, one count of rape, one count of theft, and one count of assault. Prior to trial, the State dismissed the charge of theft. During a trial before a jury, Harris moved for a mistrial. The trial court denied the motion. The jury subsequently found Harris guilty of the remaining four charges. Harris moved for a new trial and the trial court denied the motion. The trial court classified Harris as a Tier III sex offender and sentenced him to an aggregate term of six years in prison. Harris appealed, raising three assignments of error for review. This Court consolidates some assignments of error to facilitate review.

II.

## ASSIGNMENT OF ERROR I

MR. HARRIS WAS DENIED DUE PROCESS OF LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10, OF THE OHIO CONSTITUTION WHEN THE STATE [] USED HIS POST-ARREST, POST-MIRANDA WARNING SILENCE AS SUBSTANTIVE EVIDENCE OF GUILT.

## ASSIGNMENT OF ERROR II

STATE MISCONDUCT DURING CLOSING ARGUMENT VIOLATED THE PROTECTIONS AFFORDED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS ARTICLE 1, SECTIION 10 OF THE OHIO CONSTITUTION.

{¶3}    Harris argues that he was denied his constitutional right to a fair trial based on repeated improper conduct by the State.  Specifically, Harris argues that the State improperly used his post-arrest, post-*Miranda* warning silence as substantive evidence of guilt and engaged in misconduct violative of his constitutional rights during closing arguments.  This Court agrees.

{¶4}    Harris cites to numerous places in the record in support of his assertions, although he concedes that he did not object to every allegedly improper line of questioning or comment. However, he did object during the State's direct examination of Detective Anthony Kovacs, the lead detective assigned to the case, to a line of questioning implicating Harris' silence as to the consensual nature of the sexual relations between the parties.  In addition, he objected during the State's closing argument to certain allegedly improper comments.  Accordingly, his objections, though not raised continuously during trial, have preserved these issues for appellate review. *See State v. Kirby*, 9th Dist. No. 23814, 2008-Ohio-3107, ¶ 25.

Post-arrest, post-*Miranda* warning silence

{¶5}    The right of an accused to remain silent, enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966), carries with it an implicit assurance that his silence will not be used against him. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). The *Doyle* court held that the use, for purposes of impeachment, of an accused's silence at the time of arrest after receiving *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 619. In recognition of the fundamental unfairness associated with breaching the implied promise of the *Miranda* warnings, the United States Supreme Court later expanded its prior holding to prohibit the use of an accused's silence at trial as substantive evidence of guilt. *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986).

{¶6}    Moreover, the Ohio Supreme Court has held that "[t]he privilege against self-incrimination guarantees to the individual the right to remain silent, unless he chooses to speak in the unfettered exercise of his will 'during a period of custodial interrogation as well as in the courts or during the course of other official investigation.'" *State v. Stephens*, 24 Ohio St.2d 76 (1970), paragraph one of the syllabus, following *Miranda*, *supra*. The *Stephens* court further held that it is prejudicial error for the prosecutor to comment upon a criminal defendant's silence during custodial interrogation or any implications which might be drawn from that silence during closing argument. *Id.* at paragraph three of the syllabus. This Court has concluded that, where references to the criminal defendant's post-*Miranda* silence in both the State's case-in-chief and its closing argument have permeated the trial, the effect is prejudicial so as to deny the defendant the right to a fair trial. *State v. Riffle*, 9th Dist. No. 07CA0114-M, 2008-Ohio-4155, ¶ 16.

{¶7}    In this case, Deputy Charles Motylewski of the Lorain County Sheriff's Office testified that he and another deputy tracked Harris to his brother's house after the victim reported

the details of her alleged kidnapping, rape, and assault. The deputy testified that he placed Harris under arrest, read him his *Miranda* warnings, and asked him "if he knew what this was about," to which Harris replied that he "had an idea." The prosecutor then inquired of the deputy, "Is that the only thing he said?" eliciting testimony that Harris told him that he did not want to talk without his lawyer. Immediately thereafter, the prosecutor asked the deputy if anything happened once he transported Harris to the sheriff's office. Deputy Motylewski responded that he again asked Harris if he wanted to talk at which time Harris "just put his head down, looked away, and opted not to speak."

{¶8} Later, during direct examination of Detective Kovacs, the prosecutor twice inquired whether there was ever any allegation that the sexual relations between Harris and the victim were consensual. When Harris objected because of the inference that he would have come forward to law enforcement and asserted that the relations were consensual if that were the truth, the prosecutor agreed that her questions "start[ed] to go that route," but she argued that "when the defense has done what he has done so far, we get a little leeway."

{¶9} Finally, during closing argument, the prosecutor emphasized that the "only" statement Harris made to law enforcement was that he had an idea about why he was being arrested. The prosecutor further commented on Harris' silence by arguing the following: "I have an idea? Is that what you say when you are not guilty? Do you not go to the tallest building, the highest hill and say this is wrong, this is wrong, that didn't happen?" After Harris objected, the State asserted that because Harris had made one statement to the police, it could argue hypothetically regarding his failure to say more. The trial court cautioned the State. Harris requested an immediate curative instruction reminding the jury of his Fifth Amendment right to remain silent and refuse to testify, but the court declined in the interest of "just mov[ing] on."

{¶10} This Court concludes that the elicitation of the above testimony during the prosecutor's direct examination of the State's witnesses was improper and violative of the prohibition against using Harris' silence as substantive evidence of guilt. We further conclude that the prosecutor's comments during closing argument improperly raised the inference that only a guilty person would decline to talk to law enforcement and present his version of events regarding the incident. The repeated references to Harris' post-*Miranda* warning silence permeated the trial in a manner designed to deny him a fair trial. *See Riffle* at ¶ 16.

Prosecutorial misconduct during closing argument

{¶11} Although the State is generally accorded a certain degree of latitude during closing argument, "[t]he prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." (Internal citations omitted.) *State v. Smith*, 14 Ohio St.3d 13, 13-14 (1984). As an initial matter, the State "must avoid insinuations and assertions which are calculated to mislead the jury." *Id.* at 14, citing *Berger v. United States*, 295 U.S.78, 88 (1935).

{¶12} This Court has adopted the Ohio Supreme Court's test in evaluating a claim of prosecutorial misconduct arising during closing argument. We must determine "whether the prosecutor's remarks were improper and, if so, whether the remarks prejudicially affected the defendant's substantial rights." *State v. Kirby*, 9th Dist. No. 23814, 2008-Ohio-3107, ¶ 23, citing *Smith* at 14. Specifically, a prosecutor may not express any opinion as to the credibility of a witness or as to the defendant's guilt. *Kirby* at ¶ 23. A reviewing court focuses not merely on the culpability of the prosecutor, but rather considers the trial record as a whole to determine

whether the defendant received a fair trial. *Kirby* at ¶ 23, citing *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

{¶13} As discussed above, the prosecutor referenced in closing argument Harris' post-arrest, post-*Miranda* silence when she repeated his lone statement to the police and queried whether someone would not say more if he were not guilty. In this way, the prosecutor improperly commented on both Harris' silence and guilt.

{¶14} In addition, in reviewing the victim's testimony, the prosecutor repeatedly opined that the victim was credible. On no fewer than four occasions in quick succession, the prosecutor asserted, "[The victim] is credible." She further asserted that the victim was "believable" and that she never wavered during her "credible testimony." Accordingly, this Court concludes that the prosecutor made improper, blatant statements about her personal opinion as to a witness' credibility.

{¶15} Moreover, the prosecutor commented about the quality of Harris' defense. She asserted: "That's bull." "There's no defense." "[I]t's all smoke and mirrors[.]" And she implored the jury to "see through the bull that is being thrown against the wall to see what sticks." The Ohio Supreme Court concluded that comments by the prosecutor referring to the defendant's evidence as "lies," "garbage," "garbage lies," and "[a] smoke screen" went "well beyond the normal latitude allowed in closing arguments and is clearly improper." *Smith*, 14 Ohio St.3d at 14. We conclude that the prosecutor's comments in this case crossed the same line into impropriety.

{¶16} We conclude that the prosecutor's repeated and flagrant misconduct prejudicially affected Harris' substantial rights so as to deprive him of a fair trial. The misconduct permeated the entire trial, from direct examination through closing argument. Although the trial court gave

standard jury instructions to the effect that opening statements and closing arguments are not evidence, the jury is the sole judge of credibility, and the fact that the defendant did not testify must not be considered for any purpose, the pervasive nature of the prosecutor's misconduct demanded something more. *See Smith* at 15 (reasoning that "[i]n view of the fact that improper insinuations and assertions of personal knowledge by the prosecution are apt to carry great weight against the accused when they should properly carry none, some more definite guidance from the court was required.") Under the circumstances of this case, the State's misconduct deprived Harris of his constitutionally protected right to a fair trial.

{¶17} This Court now considers whether there existed overwhelming evidence of Harris' guilt which outweighed the improper references to Harris' silence and the State's improper comments during closing argument. Even where the admission of evidence constitutes constitutional error, the error is harmless "if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), at paragraph six of the syllabus.

{¶18} Harris' theory of the case, articulated during his opening statement, was that he and the victim engaged in rough, yet consensual, sexual relations during the evening of the incident after they had been out drinking together.

{¶19} The victim testified that she agreed to meet Harris after work, at which time he told her that he was planning to divorce her mother. The two went from bar to bar that evening, having one or two alcoholic beverages at each location. Although the victim called a man she had recently begun dating during the evening to report that she felt "uncomfortable," she remained with Harris and eventually began to drive him to his brother's home. The victim's

friend confirmed that she called him and seemed uncomfortable, but she ended the conversation after telling him she had to go and would call him later. She did not call him again that night.

{¶20} While driving Harris and fearing that a car behind her was a police vehicle, the victim agreed to pull over and let Harris drive so she would not be pulled over for driving while under the influence of alcohol. The victim then testified that Harris drove her to a remote wooded area where he raped her outside on the ground. She testified that he threw her back in the car and shoved her head into the center console. She testified that she pretended to be unconscious in the hope that Harris would abandon her, but he instead digitally penetrated her vagina. She testified he made her perform oral sex on him and then straddle him to engage in sexual intercourse as Harris drove down the highway. She was ultimately able to crawl out the car window and escape when Harris stopped at a motel to get a room so he could continue engaging in sexual activity with her. The victim crawled through a riverbed and foliage to arrive at a restaurant where she borrowed a patron's cell phone and called the police.

{¶21} Deputies and detectives from the Lorain County Sheriff's Office found the victim's broken sunglasses she reported Harris knocked off her when he raped her on the side of the road. They found a motel access card in the console of Harris' vehicle for the night of the incident. There was grass and dirt in the front passenger compartment of the victim's car, but no blood was observed on the car's console where Harris reportedly repeatedly banged the victim's head. The deputies photographed large bruises and open abrasions on Harris' arm where the victim reported she bit him. The sexual assault care nurse who examined the victim testified that the victim had recent bruising and abrasions on her face, arms, back, and leg, but no injuries to her vaginal, cervical, or anal areas. Laboratory testing confirmed that Harris, as well as another male, contributed DNA as evidenced by the semen samples taken from the victim.

**{¶22}** Harris' brother testified in his defense. He testified that Harris moved in with him after briefly separating from the victim's mother. He testified that the victim came over almost every evening to drink with Harris. He observed the victim sitting on Harris' lap with her arms around him. He testified that the relationship between the victim and Harris was "weird" in that they acted as though they were dating.

**{¶23}** In this case, the remaining evidence does not rise to the level of "overwhelming proof" of Harris' guilt. The victim provided detailed testimony regarding the alleged incident, and the detectives were able to corroborate portions of her allegations regarding where Harris and the victim had been on the night at issue. There was DNA evidence demonstrating sexual conduct between Harris and the victim and both the victim and Harris exhibited bruises and abrasions on their bodies. While that may be enough to overcome a challenge that the conviction was against the manifest weight of the evidence, "overwhelming proof" of guilt requires something more. In fact, "it is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks. Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *Smith*, 14 Ohio St.3d at 15.

**{¶24}** There was no evidence of injury to the victim's vaginal, cervical, or anal areas. There were no eye witnesses to any of the alleged incidents of sexual conduct, notwithstanding the allegation that the initial vaginal rape took place along a roadway during a time when two cars passed and a subsequent vaginal rape occurred for almost 20 minutes while the victim straddled Harris' lap as he drove down the highway. It is undisputed that the victim spent the evening going from bar to bar with Harris, drinking at each. There was evidence that the victim had been spending every evening with Harris after he moved in with his brother, drinking, sitting

on his lap, and acting as though the two were dating. In the absence of evidence demonstrating that it was simply incredible that the parties had merely engaged in rough, consensual sex, this Court concludes that there is not "overwhelming proof" of Harris' guilt so as to render the prosecutor's improper comments during closing argument and elicitation of improper references to Harris' silence harmless. Therefore, we cannot say, beyond a reasonable doubt, that the jury would have found Harris guilty had there been no misconduct on the part of the prosecution.

{¶25} Harris' first and second assignments of error are sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED MR. HARRIS OF A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY OVERRULING DEFENSE COUNSEL'S MOTION FOR MISTRIAL, BASED UPON THE INTRODUCTION OF IMPROPER, INFLAMMATORY AND/OR HIGHLY PREJUDICIAL TESTIMONY.

{¶26} Harris argues that the trial court erred by denying his motion for a mistrial. Because our resolution of the first two assignments of error is dispositive, the third assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

{¶27} Harris' first and second assignments of error are sustained. We decline to address his third assignment of error. The judgment of the Lorain County Court of Common Plea is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

KRISTINA W. SUPLER and ERIC C. NEMECEK, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.