[Cite as *State v. Geiger*, 2012-Ohio-4002.]

STATE OF OHIO )  IN THE COURT OF APPEALS
 )ss:  NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

STATE OF OHIO

    Appellee

    v.

MATTHEW K. GEIGER

    Appellant

C.A. No.     12CA0006-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10-CR-0427

DECISION AND JOURNAL ENTRY

Dated: September 4, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Matthew K. Geiger, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} In June 2010, Geiger and Steven Dixon were returning from a music festival in Tennessee. Geiger was driving Dixon's father's car and Dixon was riding in the front passenger's seat. While Geiger was driving through Medina County, Sergeant Scott Schmoll observed the car did not have a functioning license plate light as required by law and initiated a traffic stop.

{¶3} Sergeant Schmoll testified that Geiger appeared nervous and that he asked a canine unit to respond to the scene. While he was issuing a warning for the license plate light, a canine unit arrived and the dog alerted to the presence of drugs in the car. After searching Geiger and Dixon for weapons, Sergeant Schmoll placed the two men in the back of his patrol

car while officers searched the car. In the search of the passenger compartment, the police found "items that are commonly used for smoking marijuana," blotter paper commonly used for LSD, five cell phones, two ipods, and more than $5,000 cash. While searching under the car's hood, Officer Joel Eckstine noticed "dust disturbances" on the air filter box. Officer Eckstine removed the air box cover, then removed the air filter and found a black pouch. Inside the black pouch were Psilocin ("Mushrooms") and N-Benzylpiperazine ("Ecstasy") pills.

{¶4}     After finding the drugs, Sergeant Schmoll requested Dixon step out of the patrol car and asked if he wanted to tell him about what he found in the air filter box. Dixon immediately said the mushrooms and the money were his and the pills belonged to Geiger. Geiger admitted to purchasing the "items that are commonly used for smoking marijuana" for his father to use to smoke tobacco. These items were brand-new and did not have any drug residue on them. The blotter paper also did not have any drug residue on it.

{¶5}     In September 2010, Geiger was indicted for (1) possession of 105 Ecstasy pills, in violation of R.C. 2925.11(A)/(C)(1)(c), a felony of the second degree; and (2) possession of Mushrooms, in violation of R.C. 2925.11(A)/(C)(1)(a), a felony of the fifth degree. Geiger failed to appear and a warrant was issued for his arrest. Geiger was arrested approximately one year later and convicted after a jury trial. He now appeals from his convictions and raises two assignments of error for our review.

II

Assignment of Error Number One

THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENTS DEPRIVED THE APPELLANT OF A FAIR TRIAL.

{¶6}     In his first assignment of error, Geiger argues that the prosecutor made several improper comments during closing arguments and that these comments violated his right to a fair

trial. Specifically, Geiger argues the prosecutor (1) referenced facts not in evidence, (2) made an improper reference to his failure to testify in his defense, and (3) impermissibly declared the State's witness an expert.

{¶7} Geiger argues that he was denied a fair trial when, during closing arguments, the prosecutor referenced facts not in evidence in order to vouch for Dixon's credibility as a witness. While we agree the prosecutor's comments were improper, we disagree that Geiger was denied a fair trial.

{¶8} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *State v. Smith*, 14 Ohio St.3d 13, 13 (1984), citing *State v. Woodards*, 6 Ohio St.2d 14, 26 (1966). "It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." *Smith* at 14, citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981). The conduct of a prosecutor during trial cannot be made a ground for error unless that conduct deprives the defendant of a fair trial. *State v. Jamison*, 9th Dist. No. 03CA0107-M, 2004-Ohio-2514, ¶ 25. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Smith* at 14.

{¶9} During the rebuttal portion of closing arguments, the prosecutor was explaining that Dixon, the State's witness, has not always been truthful.

> [PROSECUTOR]: Did he lie on the witness stand? You should have seen my cross-examination in his trial. He said the money wasn't his dad's. I didn't believe that for a second, not for one second. His dad got the money back, though. Some [c]ourt somewhere – not this [c]ourt – some Federal Court somewhere decided –
>
> [DEFENSE COUNSEL]: Objection.
>
> [PROSECUTOR]: -- to give Dixon's dad the money.
>
> [DEFENSE COUNSEL]: Objection.

[COURT]: That's not in evidence, Ladies and Gentlemen. Continue, please. The prosecutor then went on to discuss why the jury should believe Dixon's testimony. Geiger objected to the prosecutor "vouching for [Dixon's] credibility." The court overruled the objection, finding the prosecutor was not vouching for credibility, but was instead responding to a comment Geiger made during his closing.

{¶10} The prosecutor's reference to facts not in evidence during closing arguments was improper. *See Jamison*, 2004-Ohio-2514, at ¶ 24-25. It also appears the prosecutor was improperly attempting to use a fact not in evidence to bolster his witness' credibility. Essentially, the prosecutor was attempting to tell the jury that because he knew when his witness was lying, he also knew when his witness was telling the truth and that he was telling the truth when he said the Ecstasy pills belonged to Geiger. "It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *Smith* at 14. The question then is whether the remark prejudicially affected Geiger's right to a fair trial. *See Jamison* at ¶ 25; *Smith* at 14.

{¶11} Dixon's credibility was clearly under attack throughout the trial. Geiger's closing highlighted the evidence presented and why the jury should not believe Dixon's testimony. Defense counsel argued Dixon was "an admitted five-time felon, who [] admitted lying to get out of trouble, who [] admitted that he was a heroin addict at the time, [and] who told [a] story about stealing [] money from his father * * *." On the other hand, the prosecutor told the jury that Dixon had nothing to gain from his testimony. Dixon was already nine months into serving his prison sentence and received no benefits for his testimony against Geiger. The prosecutor explained that while some of Dixon's testimony has been inconsistent, he had never wavered in his statement that the Ecstasy pills belonged to Geiger.

{¶12} "A reviewing court focuses not merely on the culpability of the prosecutor, but rather considers the trial record as a whole to determine whether the defendant received a fair trial." *State v. Harris*, 9th Dist. No. 11CA009991, 2012-Ohio-2973, ¶ 12. *Accord State v. Lott*, 51 Ohio St.3d 160, 166 (1990). Dixon's testimony on some minor details was inconsistent with his previous testimony in his trial. This is not surprising considering Geiger's trial took place approximately a year and a half after the incident. Dixon was impeached by both the prosecutor and defense counsel, and therefore, the jury was well informed of his inconsistent statements. However, Dixon was consistent in his testimony that the Ecstasy pills belonged to Geiger.

{¶13} Geiger cannot show that the outcome of his trial would have been different without the prosecutor's improper comments. *See State v. Leggett*, 9th Dist. No. 18303, 1997 WL 775688, * 9 (Oct. 9, 1997). The jury heard from Dixon and watched as he was impeached by the defense and the prosecutor. Reviewing the record in its entirety, we cannot conclude that the prosecutor's improper reference to facts outside of the evidence prejudiced Geiger's right to a fair trial. *See Harris*, 2012-Ohio-2973, at ¶ 12.

{¶14} Geiger further argues that he was denied a fair trial because of other improper comments made by the prosecutor during closing arguments. First, Geiger argues the prosecutor made a "comment about Appellant being one of two eyewitnesses [which] was a direct comment on his failure to testify thus depriving him of a fair trial." Second, Geiger argues the prosecutor impermissibly declared the State's witness an expert in drugs and that declaration deprived him of a fair trial. Geiger did not object to either of these comments during closing, nor does he argue plain error on appeal.

{¶15} Geiger's failure to object during closing arguments forfeits the issue on appeal except for plain error review. *State v. Andrews*, 9th Dist. No. 25114, 2010-Ohio-6126, ¶ 35.

Geiger, however, has failed to raise plain error on appeal. "[T]his [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 41. Geiger has not argued plain error, and we will not create a plain error argument on his behalf.

{¶16} Geiger's first assignment of error is overruled.

Assignment of Error Number Two

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS.

{¶17} In his second assignment of error, Geiger argues that the weight of the evidence supports the conclusion that he did not knowingly possess the drugs found in the car. We disagree.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. The court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Otten* at 340. *See also State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶18} "No person shall knowingly * * * possess * * * a controlled substance." R.C. 2925.11(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶19} "'[P]ossession' means having control over a thing or substance * * *." R.C. 2925.01(K). A person may have actual or constructive possession. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate possession." *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). However, "possession of the keys to [an] automobile is a strong indication of control over the automobile and all things found in * * * the automobile." *State v. Ray*, 9th Dist. No. 03CA0062-M, 2004-Ohio-3412, ¶ 23, quoting *State v. Miller*, 4th Dist. No. 98CA2467, 1999 WL 595361, * 8 (July 27, 1999).

{¶20} "Possession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." *State v. Figueroa*, 9th Dist. No. 22208, 2005-Ohio-1132, ¶ 8, quoting *State v. Alicea*, 8th Dist. No. 78940, 2001 WL 1243944, * 6 (Oct. 18, 2001).

{¶21} Dixon testified that he hid the Mushrooms in the air filter box, but did not put the Ecstasy pills there. Dixon said that he was aware that Geiger had the pills during the concert. According to Dixon, Geiger also knew that he used the air filter box to hide his drugs. Therefore, Dixon concluded, Geiger must have put the pills in the air filter box. Dixon also

testified about a verbal agreement he had with Geiger. According to Dixon, while they were awaiting trial Geiger promised to sign an affidavit claiming ownership of the Ecstasy pills so that Dixon would not be charged with possession of the pills. Dixon said Geiger later refused to sign an affidavit, and he was convicted of possession of both the Mushrooms and Ecstasy pills.

{¶22} There were inconsistencies in Dixon's testimony. For example, he could not remember the number of days they were in Tennessee for the music concert, whether he had purchased drugs at the concert or brought drugs with him, and whether he was high when the police pulled the car over. Geiger did not present any evidence at trial. The crux of Geiger's argument is that Dixon is not a credible witness and the jury lost its way when it believed his testimony.

{¶23} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The fact-finder "is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶24} Because Geiger failed to initially appear in court, he was not brought to trial until approximately a year and a half after his arrest. It is therefore not surprising that Dixon could not remember some of the minor details and that there were inconsistencies from his testimony in his previous trial. However, Dixon was consistent in his statements that (1) Geiger had possession of Ecstasy pills at the concert, (2) Geiger knew of Dixon's hiding place in the air filter, and (3) Dixon did not put the pills in the car.

{¶25} After reviewing the record, despite some inconsistencies in Dixon's testimony, we cannot conclude that the finder of fact clearly lost its way. The credibility of a witness is

primarily for the finder of fact. *DeHass* at paragraph one of the syllabus. Geiger's convictions are not against the manifest weight of the evidence. Accordingly, his second assignment of error is overruled.

## III

{¶26} Geiger's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

BELFANCE, J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶27}  I concur in the judgment and most of the majority's opinion.  I do not concur in the refusal to consider whether the prosecutor's statements during closing to which Mr. Geiger's lawyer failed to object constituted plain error.  They did not.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.