[Cite as *State v. Veal*, 2012-Ohio-3555.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26005 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICKY M. VEAL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 11 3142 |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2012

MOORE, Presiding Judge.

{¶1} Appellant, Ricky Veal, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} On December 2, 2010, the Summit County Grand Jury indicted Mr. Veal on one charge of rape in violation of R.C. 2907.02(A)(2) with a sexually violent predator specification and a repeat violent offender specification, one charge of kidnapping in violation of R.C. 2905.01(A)(4) with a sexually violent predator specification, a sexual motivation specification, and a repeat violent offender specification, and robbery in violation of R.C. 2911.02(A)(2) with a repeat violent offender specification. At his arraignment, Mr. Veal pled not guilty, and the case proceeded to a jury trial on the charges absent the specifications. The jury found Mr. Veal guilty on all charges. Mr. Veal waived his right to jury trial on the attendant specifications, and the trial court found him guilty of all specifications. On June 23, 2011, the trial court issued an entry

sentencing Mr. Veal to a total term of incarceration of 48 years to life. Mr. Veal timely filed a notice of appeal and raises four assignments of error for our review. We have re-ordered the assignments of error to facilitate our discussion.

II.

## ASSIGNMENT OF ERROR IV

[MR. VEAL]'S CONVICTION FOR ROBBERY, KIDNAPPING, AND RAPE
IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3}  In his fourth assignment of error, Mr. Veal argues that his convictions were against the manifest weight of the evidence. We do not agree.

{¶4}  When a defendant asserts that his conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist.1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist.1987).

{¶5}  Here, Mr. Veal was convicted of rape in violation R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Additionally, Mr. Veal was convicted of kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat or deception * * * shall remove another from the place where the other

person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will[.]" Lastly, Mr. Veal was convicted of robbery in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" Mr. Veal makes no argument as to the weight of the evidence regarding the specifications attendant to these offenses, and we therefore will limit our review accordingly.

{¶6} As part of its case-in-chief, the State presented the testimony of the victim, witnesses to the victim's behavior after the attack, employees of the Ohio Bureau of Criminal Identification ("BCI"), medical personnel, and police officers. The victim, Nichole, testified that, on July 16, 2010, she was six months pregnant, and the water service to her home had been shut off. She called her sister who worked at a nearby gas station. The sisters made plans to meet after Nichole's sister's shift ended at midnight. They planned to meet half-way between the gas station and Nichole's home to then walk to her sister's house so that Nichole could take a shower. While Nichole was walking to meet her sister, she encountered a dark-blue, four-door car, and the driver began flirting with her. After Nichole ignored his advances, the driver grabbed her, forced her in his car and drove onto an expressway. He exited the expressway and drove to a grassy clearing on Juneau Avenue, where he stopped. He told Nichole that he wanted to have sex with her, and she said no and told him she was pregnant. He then punched her in the face and grabbed her hair, pulling her out of the car. He ripped off her clothing, and she began screaming. He then placed an object by her side and told her that he was going to kill her if she did not be quiet. Nichole's attacker forced her to masturbate him, and he then vaginally raped her. After the attack, as Nichole was looking for her clothes in the clearing, her attacker drove

off. Nichole ran to the nearby house of Stephen Parker to seek help. Parker told her that he did not have a phone, but gave her some clothes. She then ran to the house of Charlene Thornton. Ms. Thornton's daughter, Charnele Bell, provided Nichole with some shoes and called 9-1-1.

{¶7} Mr. Parker testified that he heard screaming in the early morning hours of July 17, and, after looking outside and seeing nothing, he returned indoors to watch television. He then heard another scream, and he went back outside, looked down the street, and saw a car drive away quickly. He returned inside, and looking out from inside his home, he saw a naked woman walk past his house. She then came to his house and told him that she had been raped, and Mr. Parker could see injuries to her head. He went inside and got her some clothes, and she left.

{¶8} Ms. Bell and Ms. Thornton testified that, in the early morning hours of July 17, a woman was knocking on Ms. Thornton's windows and door asking for help. After looking outside, they saw a naked woman in the street trying to flag down cars. The woman then obtained clothes at a neighbor's home, but returned to Ms. Thornton's house after another car drove off without helping her. Ms. Bell gave her a pair of shoes and called 9-1-1.

{¶9} Officer Jason Belacic of the City of Akron Police Department testified that he received a report of a rape in progress on July 17, and he and his partner were dispatched to Juneau Avenue. When they arrived, they saw a woman standing in the street sobbing. Her face was red and swollen, and she appeared to be "in severe distress." She told the officers that she was walking home from a drive-thru, and a man pulled out in front of her and asked her to get in his car, and, after she refused, he forced her inside, drove to a wooded area just south of Stoner Street on Juneau Avenue, and raped her. When checking the area, the officers photographed visible tire tracks in the grass clearing on Juneau Avenue. The officers could not locate

Nichole's clothes in the clearing, but they did locate her sandals and sunglasses. Nichole also informed the officers that she had her purse with her, but the man drove off with it.

{¶10} Willie Cheatham testified that he is a paramedic for the City of Akron Fire Department. He was dispatched to the scene on Juneau Avenue on July 17, and, when he arrived, he noticed injuries to Nichole's face and head. He gave her ice packs and tried to calm her down. On cross-examination, Mr. Cheatham testified that Nichole told him that her attacker did not hit her stomach, and, in response to a question he asked, which he could not remember, the victim told him something to the effect that her attacker had "looked cool" or had "looked familiar."

{¶11} Diana Shaffer, a sexual assault nurse, performed a rape exam on Nichole at the hospital. She identified photographs admitted at trial which depicted injuries to Nichole's face and arms. Employees from the Ohio BCI testified that they received the rape kit, from which certain samples tested positive for semen. After completing a DNA analysis, the DNA profile obtained from the semen was consistent with Mr. Veal's DNA profile.

{¶12} Detective Jerome McMillan of the City of Akron Police Department testified that he went to the hospital to speak with Nichole and to receive a synopsis from the responding officers. Nichole had visible injuries to her face. The detective again met with her the next day and photographed her injuries. She told the detective that she did not know her attacker. After receiving the DNA analysis results from BCI, Detective McMillan compiled a photo array. Nichole identified Mr. Veal as her attacker from the photo array. The detective had investigated Mr. Veal's listed residence and noted a dark blue, four-door car in the drive-way. On cross-examination, the detective verified that Nicole had specifically stated that her attacker was driving a Pontiac Grand Am, and the vehicle in the drive-way was not a Grand Am, but was

instead a Dodge Stratus. Further, the detective verified that he had not discovered any connection between Mr. Veal and a Grand Am.

{¶13} Mr. Veal testified on his own behalf. Mr. Veal stated that he had met Nichole, whom he knew as Nicky, prior to July 17 at a "skill games" location. Nichole had asked him for money a few times, and after giving her money, she would perform oral sex on him or they would have sexual intercourse. Each time he had seen her, Nichole was with a man, whom she said was her brother-in-law, Larry. In the late evening hours of July 16 or early morning hours of July 17, Larry drove Mr. Veal and Nichole to what Mr. Veal believed was a party at Nichole's sister's house. When they arrived, Mr. Veal and Nichole sat outside the home, and Nichole began asking Mr. Veal about money. She then said she wanted to have sex with him, and they had intercourse outside the home; however, Mr. Veal believed that Nichole was acting strangely and trying to hold him down. When he was getting dressed, Larry came outside the house and threatened to shoot them because Mr. Veal had given Nichole a sexually transmitted disease, which she had given to Larry. Mr. Veal put his hands in the air, and Larry instructed Nichole to get his money. Mr. Veal tried to distract them and pushed Nichole down and threw a beer can at Larry. He then ran and hid. From his hiding place, he could hear Larry and Nichole arguing, and he saw Larry slap Nichole. He then heard Larry say that Mr. Veal would probably return with the police, and Larry told Nichole to go to one of the nearby houses to report that she was raped.

{¶14} In his merit brief, Mr. Veal argues that Nichole's testimony lacked credibility. In support, he argues that Nichole's testimony varied from his testimony as well as that of other witnesses. However, although the witnesses' testimony presented alternate versions of events, "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*,

9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). This is because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, ¶ 30 quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). We cannot say the jury's resolution of the testimonial inconsistencies was unreasonable. *See State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, ¶ 18 ("A conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events."). Further, the jury "has the right to place considerable weight on the testimony of the victim." *State v. Felder*, 9th Dist. No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992).

{¶15} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Veal guilty of rape, kidnapping and robbery. Accordingly, Mr. Veal's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR I

> THE PRO[SE]CUTION VIOLATED [MR. VEAL]'S DUE PROCESS RIGHTS WHEN HE REPEATEDLY AND AGGRESSIVELY QUESTIONED [MR. VEAL] AS TO WHY HE DID NOT SPEAK TO POLICE EVEN THOUGH [MR. VEAL] HAD INVOKED HIS MIRANDA RIGHTS AND HAD REQUESTED AN ATTORNEY.

{¶16} In his first assignment of error, Mr. Veal argues that the prosecution engaged in misconduct and violated his due process rights by questioning him as to why he neglected to provide Detective McMillan with details of the incident during a post-arrest interview. We do not agree.

{¶17} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court determines whether the prosecutor's actions were improper, and, if so, whether the substantial rights of the defendant were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Loza*, 71 Ohio St.3d 61, 78 (1994).

{¶18} Further, when the defendant fails to object to the purported acts of prosecutorial misconduct, he limits appellate review to that of plain error. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, ¶ 45, citing *State v. Slagle*, 65 Ohio St.3d 597, 604 (1992). As Mr. Veal did not object to the statements made by the prosecutor that he now argues were improper, he may now only argue plain error. *See id.* Pursuant to Crim.R. 52(B), a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *State v. Kobelka*, 9th Dist. No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001). As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error. *Kobelka,* at *2, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), and *State v. Phillips*, 74 Ohio St.3d 72, 83 (1995).

**{¶19}** As set forth in our discussion of his first assignment of error, Mr. Veal testified that he had consensual sexual contact with the victim on four occasions including the date at issue. On cross-examination, the State questioned him as to why he did not provide these details to the detective who had interviewed him, and referenced a taped interview, which the State later played for the jury in its rebuttal case. During the State's closing arguments, the State again referenced that Mr. Veal had testified to more details regarding the incident than he had previously provided the detective.

**{¶20}** On appeal, Mr. Veal argues that the State's references to his failure to provide these details were improper. The United States Supreme Court has held that impeachment of a defendant by his silence violates the Constitution where a defendant has received the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966); *Doyle v. Ohio*, 426 U.S. 610 (1976). However, where the defendant has chosen to speak after receiving his Miranda warnings, he may be questioned as to his prior inconsistent statements, including his omission of details which are "not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Anderson v. Charles*, 447 U.S. 404, 409 (1980).

**{¶21}** Here, Mr. Veal received his Miranda warnings prior to the interview with Detective McMillan. The parties agree that Mr. Veal began to answer the detective's questions prior to invoking his Miranda rights. However, Mr. Veal argues that questions and comments made by the prosecutor regarding details that Mr. Veal omitted during his interview were tantamount to commenting on Mr. Veal's silence. The State responds that references to his silence were not improper where Mr. Veal had begun answering the detective's questions. The State relies on the Supreme Court's holding in *Anderson*.

**{¶22}** However, we need not decide the propriety of the prosecution's remarks, as Mr. Veal has failed to demonstrate that the outcome of the case would clearly have been different but for the alleged improper remarks and questions. In addition to the victim, on behalf of the State, police officers, a paramedic, and a sexual assault nurse testified. Although the jury might possibly have placed more weight on Mr. Veal's credibility had the prosecutor not referenced his failure to provide the details of the incident, there is no assurance that they would have. We are not persuaded that the outcome would clearly have been different absent these questions and remarks. Accordingly, Mr. Veal's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, IN THE PRESENCE OF THE JURY, IT DIRECTLY QUESTIONED [MR. VEAL] AS TO WHETHER OR NOT DEFENSE COUNSEL HAD PROVIDED EFFECTIVE REPRESENTATION.

**{¶23}** In his second assignment of error, Mr. Veal argues that the trial court violated his due process rights when, in the presence of the jury, the trial court asked Mr. Veal if he believed his attorney was providing him effective representation.

**{¶24}** In reviewing whether a judge's remarks prejudiced a defendant to the extent that it was error for the trial court to not grant a mistrial, we must take into account the following factors:

(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they were made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

*State v. Wade*, 53 Ohio St.2d 182, 188 (1978). *See also State v. McCarley*, 9th Dist. No. 22562, 2006-Ohio-1176, ¶ 10.

**{¶25}** Here, the transcript indicates that, when questioned by the State as to why Mr. Veal did not provide corroborating witnesses to his version of events, Mr. Veal explained that he did not see his trial counsel until two or three months after he was incarcerated. Based upon this statement, after cross-examination, and in the presence of the jury, the trial court asked Mr. Veal whether he believed his trial counsel was effectively representing him,

> THE COURT: I have a question for you, sir, concerning Mr. Greven [defense counsel].
>
> You said he didn't have a chance to talk to you at the jail?
>
> [MR. VEAL]: We talked but not often. I talked to him with - - we never - - I never seen him often.
>
> THE COURT: Do you have any concerns about him being able to represent you?
>
> [MR. VEAL]: No. I - - he's my lawyer. I ain't got no complaints.
>
> THE COURT: Do you feel like he's doing a good job for you?
>
> [MR. VEAL]: Yes.
>
> THE COURT: Okay.
>
> MR. GREVEN: Can I approach?
>
> THE COURT: Yeah. I mean you can see what my concern is.

**{¶26}** After a side-bar conversation, defense counsel then began to question Mr. Veal regarding his representation of him. The State then asked if counsel could approach, and the court stated as follows:

> This is - - Ladies and Gentlemen, I may have made a mistake here. And at this point, I'm going to ask you to disregard the questions. I have an obligation to make sure that everyone is represented and gets a fair trial, and you all know that already. And I may have made a mistake in asking the questions that I asked.
>
> So at this point, I'm going to ask you to strike that from your memory. I'm ordering you to strike it. You can't consider it for any purpose.

{¶27} A discussion then took place outside of the presence of the jury. After the jury returned, defense counsel moved for a mistrial and then addressed the jury, explaining that the reason he had questioned his client was to refute the court's implication that he was not performing effectively as defense counsel. The court denied the motion for a mistrial and also addressed the jury. The court again instructed the jury to disregard its questions to Mr. Veal.

{¶28} Mr. Veal's satisfaction with his attorney's representation was not relevant to any of the criminal charges that the jury was to consider. To the extent that other issues surfaced regarding the effectiveness of counsel's representation, the better course of action would have been for the court to place those matters on the record outside of the hearing of the jury. However, the trial court twice instructed the jury to disregard its questions posed to Mr. Veal. We presume that the jury followed the instructions of the trial court. *State v. Truitt*, 9th Dist. No. 25527, 2011-Ohio-6599, ¶ 45. Based upon the foregoing, we cannot say that the outcome of the trial would have been different absent the trial court's line of questioning, and thus Mr. Veal has failed to demonstrate prejudice. *See Wade*, 53 Ohio St.2d at 188. Accordingly, Mr. Veal's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE CUMULATIVE EFFECT OF THE PROSECUTORIAL AND JUDICIAL ERRORS [AND] TRIAL ERRORS VIOLATED [MR. VEAL]'S DUE PROCESS RIGHTS.

{¶29} In his third assignment of error, Mr. Veal argues that the cumulative effect of the trial court's errors violated his due process rights.

{¶30} To support a claim of cumulative error, there must be multiple instances of harmless error. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair

trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212, (1996) quoting *U.S. v. Hasting*, 461 U.S. 499, 508-09 (1983).

**{¶31}** In addition to the alleged errors set forth in his first and second assignments of error, which we overruled above, Mr. Veal contends that the trial court erred by improperly replacing a juror with an alternate juror, by allowing the State to imply that Mr. Veal had a burden of proof, and by allowing the State to play a video of the detective's interview with Mr. Veal, which showed him handcuffed. We will examine each of these issues separately.

Removal of Juror

**{¶32}** Crim.R. 24(G)(1) provides that "[a]lternate jurors * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." The trial court may dismiss a juror upon determining that the juror is unsuitable for service. *State v. Smith*, 9th Dist. No. 23288, 2007-Ohio-1680, ¶ 43. This Court reviews the trial court's decision to remove a juror for an abuse of discretion. *Id.* The phrase "abuse of discretion," connotes that the trial court's decision was "unreasonable, arbitrary, or unconscionable." *State v Adams,* 62 Ohio St.2d 151, 157 (1980). Here, the trial court removed a juror who had shown up late for the second day of trial. This juror was one of two African-American jurors who had been impaneled. Defense counsel objected to the removal of the juror, because he was concerned that removal of the juror would leave only one African-American juror on the jury who was rendering a verdict upon Mr. Veal, an African-American man. On appeal, Mr. Veal argues that the trial court abused its discretion because the juror was only ten minutes late. The record indicates that the reason for removal of the juror was because,

due to her tardiness, she had not heard the full testimony of one of the witnesses. Therefore, we cannot say the trial court's decision to replace the juror with an alternate was "unreasonable, arbitrary, or unconscionable," and thus the trial court did not err in replacing the juror. *See Adams* at 157.

Burden of Proof

**{¶33}** Mr. Veal next cites a statement made by, and two questions asked by, the prosecutor from which he argues that the jury could infer that Mr. Veal had a burden of proving his innocence. However, upon objections to the questions, the trial court sustained the objections and instructed the jury that the defendant had no burden of proof. As set forth in our discussion of Mr. Veal's second assignment of error, we presume that the jury followed the instructions provided by the trial court, and Mr. Veal has provided us no reason to presume otherwise. *See Truitt,* 2011-Ohio-6599*,* at ¶ 45.

Video of Interrogation

**{¶34}** During the State's rebuttal case, as set forth in our response to Mr. Veal's second assignment of error, the State played the recorded interview conducted by Detective McMillan. In the interview, Mr. Veal is handcuffed. No objection was made to the playing of the video. Thus, Mr. Veal has limited his challenge to that of plain error. *See Smith*, 97 Ohio St.3d at ¶ 45.

**{¶35}** The video displays Mr. Veal in the interrogation room, and his left wrist is handcuffed to the interrogation table. However, prior to playing the video for the jury, the State inquired of Detective McMillan as to the use of the handcuffs,

> Q. And I should ask you also. In this video, Mr. Veal is actually cuffed. Is that true?

A. All prisoners are handcuffed as part of the procedure when you're brought into the Akron Police Department if you're under arrest.

{¶36} Thus, the detective explained that the purpose of the handcuffs in the video was a procedure utilized by the police department in regard to all individuals under arrest. Upon review of the video, the footage is shot from the right side of Mr. Veal, and the handcuffs are not particularly noticeable. Under these circumstances, assuming without deciding that the trial court erred in allowing the State to play the video, we cannot say that the outcome of the trial would have been different had the trial court permitted only an audio version of the recording to be played.

{¶37} Based upon the foregoing, after reviewing the entire record, we cannot say that Mr. Veal was denied a right to a fair trial. *DeMarco*, 31 Ohio St.3d at paragraph two of the syllabus. Accordingly, Mr. Veal's third assignment of error is overruled.

III.

{¶38} Veal's assignments of error are overruled, and the judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

DICKINSON, J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.