DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Anthony Kirby, appeals the decision of the Summit County Court of Common Pleas.
 I. {¶ 2} Kirby was indicted by the Summit County Grand Jury on two counts of rape, in violation of R.C. 2907.02(A)(2); one count of kidnapping, a violation of R.C. 2905.01(A)(4); one count of felonious assault, a violation of R.C. 2903.11(A)(2); one count of receiving stolen property, a violation of R.C. 2913.51(A); and one count of driving under suspension, a violation of R.C. 4510.11. Kirby pled not guilty and the matter proceeded to a jury trial. The jury found Kirby not guilty on both rape charges and the kidnapping charge but guilty on the felonious assault, receiving stolen property, and driving under suspension charges.
 {¶ 3} Kirby's second and third assignments of error have been rearranged to facilitate this Court's review. *Page 2 
 II. ASSIGNMENT OF ERROR I "THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF FELONIOUS ASSAULT AND AS A RESULT ANTHONY KIRBY'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."
 ASSIGNMENT OF ERROR II "THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE AND AS A RESULT, ANTHONY KIRBY'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."
 {¶ 4} In his first assignment of error, Kirby argues that his felonious assault conviction was not supported by sufficient evidence. In his second assignment of error, despite its broad wording, Kirby argues only that has conviction for felonious assault is against the weight of the evidence. This Court disagrees.
 {¶ 5} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence "are separate and legally distinct determinations." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is *Page 3 
whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. See, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 6} In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
Accordingly, we address Kirby's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 7} To determine whether a conviction is against the manifest weight of the evidence, an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} A weight of the evidence challenge maintains that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. quoting Tibbs v. Florida (1982), 457 .S. 31, 42. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, Otten, 33 Ohio App.3d at 340. *Page 4 
 {¶ 9} Kirby was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 10} Samuel Oliver testified on behalf of the State at Kirby's trial. Mr. Oliver testified that around 1:30 a.m. on November 7, 2006, he observed a female being pushed out of a white truck that stopped in front of him. Mr. Oliver stated that the woman ran up to his vehicle asking for help. The woman, naked from the waste down, said she had been raped, and Mr. Oliver noticed that her throat was slit. Mr. Oliver said the truck "took off" and he followed it to a restaurant and called 911 from his cell phone. He told the dispatcher what had happened and then returned to where he had left the woman. Mr. Oliver identified a picture of the vehicle the woman was thrown from and the license plate. In addition, Mr. Oliver identified the victim from a picture and identified Kirby as the man driving the truck.
 {¶ 11} Officer Horvath of the Akron Police Department testified that on November 7, 2006, he was dispatched to Johnston and McGowan Streets around 2:00 a.m., where he found Ms. Digman sitting on the sidewalk. He stated that Ms. Digman told him that a man grabbed her, forced her into a truck, and put a knife to her throat. Ms. Digman told Officer Horvath that the man cut her throat and raped her.
 {¶ 12} Officer Michael Beech of the Akron Police Department testified that on November 7, 2006, he and his partner, Officer Stevens, were dispatched to the Corral Restaurant. Officer Beech testified that Kirby was at the restaurant in a white truck matching the description dispatch gave to him. Officer Beech stated that upon arriving at the restaurant, they ran the license plate on the white truck and learned that it had been reported stolen. Officer Beech stated that at that point, Kirby was placed under arrest for possession of a stolen vehicle. *Page 5 
 {¶ 13} Officer Beech testified that when Ms. Digman was brought to the restaurant, she identified Kirby as the person who had cut her throat and raped her. Officer Beech testified that Ms. Digman also identified the truck that Kirby was driving. Officer Beech also stated that Mr. Oliver identified Kirby as the person who pushed Ms. Digman out of the truck. In addition, Officer Beech testified that Ms. Digman's pants were found in the back of the truck along with a box cutter knife that matched Ms. Digman's description of the knife that was used to cut her throat.
 {¶ 14} Dr. Peter Listerman was also called to testify on behalf of the State at Kirby's trial. Dr. Listerman treated Ms. Digman when she arrived at St. Thomas Hospital. He testified that Ms. Digman presented with a report of rape and assault. Ms. Digman had an abrasion on her chin and a laceration across the base of her neck that required his attention. Dr. Listerman stated that it took four stitches to close the wound on Ms. Digman's neck. It was his opinion that a relatively sharp object caused Ms. Digman's wound. When questioned about the absence of blood in the pictures that were taken at the hospital, Dr. Listerman explained that Ms. Digman could have held pressure on the wound and/or the nurses probably cleaned the wound before he examined her. Dr. Listerman testified that after he treated Ms. Digman, she was referred to a sexual assault nurse examiner who completed her evaluation.
 {¶ 15} Valerie Prulhiere, a forensic nurse examiner coordinator in victim services for the Developing Options for Violent Emergencies program ("D.O.V.E.") at Summa Health System, also testified on behalf of the State. Ms. Prulhiere testified that she photographed and examined Ms. Digman when she was brought into the D.O.V.E. unit. Ms. Prulhiere stated that after obtaining Ms. Digman's consent, she obtained her medical history and the history of the assault. *Page 6 
 {¶ 16} Ms. Prulhiere testified that Ms. Digman told her that around midnight on November 7, she was assaulted and that the person she knew as Bill raped her orally and vaginally. Ms. Prulhiere further testified that Ms. Digman also told her that Bill grabbed her hair and her neck and sliced her neck with a box cutter. Ms. Prulhiere described the wound on Ms. Digman's neck when she first photographed it as "a slicing wound that was active, slow oozing of blood."
 {¶ 17} David Niemeyer, a forensic scientist with the Ohio Bureau of Criminal Investigation ("BCI"), also testified on behalf of the State. Mr. Niemeyer testified that he works in the serology division of the BCI. Mr. Niemeyer stated that he tested different items of evidence relating to the present matter for the presence of body fluids such as semen, blood, urine, saliva and feces. When asked if he found the presence of blood on the box cutter he tested, Mr. Niemeyer responded that he did not, but that the absence of blood did not mean that there was no DNA material on the box cutter.
 {¶ 18} Heather Bizub, a forensic scientist in BCI's serology DNA section, was called by the State to testify at Kirby's trial. Ms. Bizub testified that she examined several of the items collected as part of the investigation in the present matter. In addition to offering other test results, Ms. Bizub testified that she received a blade from the box cutter involved in this matter. Ms. Bizub testified that she found the presence of Ms. Digman's DNA on the blade. Ms. Bizub stated that it is possible to have the presence of DNA without having blood.
 {¶ 19} Kirby testified on his own behalf. He told the jury that he picked up the victim, a prostitute, and drove her to a secluded location where he exchanged cocaine for consensual sex. He explained that she wanted more drugs and asked him to drive her to a house where she could obtain crack cocaine. Kirby drove her to the house but decided not to stop because he knew the *Page 7 
residents. He drove around for a moment and dropped her off. Kirby testified that the victim was not injured when she exited his vehicle and that Mr. Oliver lied in his testimony about what happened. He further admitted that he had lied to the police many times on the night of his arrest.
 {¶ 20} Upon review of the evidence, we cannot conclude that the jury lost its way when it found Kirby guilty of felonious assault. The greater weight of the evidence demonstrated that Kirby knowingly caused physical harm to the victim when he cut her throat with his knife, a deadly weapon. The jury did not lose its way and Kirby's conviction for felonious assault is not against the weight of the evidence.
 {¶ 21} Having disposed of Kirby's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra at *2. Kirby's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT DEPRIVED ANTHONY KIRBY OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 22} In his third assignment of error, Kirby argues that prosecutorial misconduct during closing argument deprived him of a fair trial. This Court agrees that the prosecutor made improper comments expressing his personal opinions about the case and in commenting on Kirby's post-Miranda silence. However, we conclude that, notwithstanding the improper comments, Kirby received a fair trial.
 {¶ 23} To evaluate a claim of prosecutorial misconduct in closing argument, this Court first decides whether the prosecutor's remarks were improper and, if so, whether the remarks *Page 8 
prejudicially affected the defendant's substantial rights. State v.Smith (1984), 14 Ohio St.3d 13, 14. During closing argument, a prosecutor may not express his personal belief or opinion as to the credibility of a witness. Id. Likewise, the prosecutor may not express his opinion as to the guilt of the defendant. Id. See, also, State v.Thayer (1931), 124 Ohio St. 1, 5. As this Court reviews Kirby's claim, we consider the trial record as a whole to determine whether Kirby received a fair trial rather than focus on the culpability of the prosecutor. State v. Lott (1990), 51 Ohio St.3d 160, 166. We may reverse Kirby's conviction only if the prosecutor's improper conduct deprived him of a fair trial. State v. Carter (1995), 72 Ohio St.3d 545, 557.
 Comment on Kirby's Guilt {¶ 24} Kirby argues that the prosecutor expressed his personal opinion of Kirby's guilt. In his brief, Kirby points to several examples when the prosecutor used phrases like "I think," "We think," and "We can prove." This Court's review of the entire closing argument demonstrates additional instances of the prosecutor's use of similar phrases.
 {¶ 25} Kirby did not object to the specific statements set out above. However, Kirby did object to the one of the prosecutor's comments that expressed an opinion on Kirby's guilt. And almost immediately after the specific statements set out above, Kirby moved for a mistrial based on those comments. Kirby's objection and motion for mistrial, in the circumstances of this case, preserved this issue for our review.
 {¶ 26} The prosecutor's first comment on Kirby's guilt concerned the receiving stolen property charge. After his review of the evidence, the prosecutor concluded: "* * * I believe it is proof beyond a reasonable doubt." Kirby objected and the trial court apparently sustained the objection, saying "[y]our opinion doesn't matter." At the conclusion of his closing argument, the prosecutor again expressed his personal opinion on Kirby's guilt generally when he told the jury *Page 9 
"we think * * * a crime has occurred * * *." One final paragraph of the prosecutor's closing argument and Kirby's request for a recess is all that separated this comment from Kirby's motion for a mistrial.
 {¶ 27} A prosecutor may not express his personal opinion as to the guilt of the defendant. Smith, supra. The prosecutor did this on two different occasions, once followed by an objection and the second followed almost immediately by a motion for a mistrial. This Court concludes the prosecutor made improper statements about his personal belief of Kirby's guilt.
 Comment on Kirby's Silence {¶ 28} Kirby also argues that the prosecutor committed misconduct when the prosecutor commented on Kirby's post-Miranda silence. Specifically, the prosecutor told the jury to "take the testimony of Officer Beech, when he gave [Kirby] Miranda at the scene, * * * [Kirby] refused to say anything about the pick-up truck. That's interesting. Why wouldn't you say anything about a pick-up truck unless you knew it was stolen." Just a few pages later, the prosecutor again commented on the defendant's silence: "[Kirby] is given Miranda. * * * Do you want to make a statement? Sure. What about the pick-up truck? I don't want to make a statement any more." Following an objection, the prosecutor continued his review of the evidence: "Officer Beech stated [Kirby] didn't want to talk about the pick-up truck and you decide whether or not that goes to this particular offense [receiving stolen property]. And you determine whether you think that is a piece of evidence worthy of your consideration." In the prosecutor's transition to his next topic, he again emphasized that "[Kirby] [d]oesn't want to talk *Page 10 
about the pick-up truck, so he is transported to the Akron Police Department and the truck is towed to the crime scene garage."[1]
 {¶ 29} A defendant's post-arrest, post-Miranda silence cannot be used against him. Doyle v. Ohio (1976), 426 U.S. 610, 617-18. Silence in the wake of Miranda warnings is ambiguous because it may be nothing more than the suspect's exercise of his rights. Under such circumstances, it would be fundamentally unfair to allow the prosecution to use such silence against him at trial. Doyle, 426 U.S. at 617. Numerous courts have declared improper a prosecutor's statements during closing argument noting the accused's failure to assert his innocence after receivingMiranda warnings. See, e.g., State v. Caldwell, 10th Dist. No. 02AP-576, 2003-Ohio-271, ¶ 38 (listing cases reaching a similar result).
 {¶ 30} The prosecutor's comments clearly suggested Kirby's silence indicated his guilt. These comments were improper.
 Kirby Received a Fair Trial {¶ 31} Having concluded that the prosecutor's comments were improper, we must decide whether the remarks prejudicially affected Kirby's substantial rights. Smith, 14 Ohio St.3d at 14. After considering the entire closing argument, State v. Slagle (1992), 65 Ohio St.3d 597, 607, this Court cannot conclude, however, that the prosecutor's comments prejudiced Kirby's right to a fair trial. We recognize that "it is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks. Instead, it must be clear *Page 11 
beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." Smith, 14 Ohio St.3d at 15. "In other words, not only must the prosecutor's remarks be improper, the defendant must show that the outcome of his trial would have been different absent the improper remarks." State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303.
 {¶ 32} In large part, Kirby's own testimony lessened the sting of the prosecutor's improper comments. Kirby testified in his own defense at trial. On direct examination, his attorney asked him what happened after he was placed under arrest for receiving stolen property. Kirby answered: "I think one cop starts reading my Miranda rights, and I stopped — stopped answering questions in the back seat of the cruiser. I just remain silent." A few questions later, Kirby's attorney asked him what happened when he arrived at the police station. Kirby responded: "They put me in an interrogation room, that's when they proceed to tell me that I was being arrested for rape and at that point I told them I wanted a lawyer."
 {¶ 33} In sum, through his own testimony on direct examination, Kirby told the jury that he chose to remain silent after hearing his rights and that he exercised his right to counsel in response to police questioning. Kirby also testified at length about the receiving stolen property and felonious assault charges, and he admitted he did not have a driver's license.
 {¶ 34} As this Court concluded in Leggett, "Absent the remarks of the assistant prosecutor in her closing argument, the jury could have easily drawn the same inferences that the assistant prosecutor argued to the jury; * * *." Id. As in Leggett, the jury heard Kirby's testimony and observed his demeanor. The jury obviously chose to credit some of his testimony as it acquitted him of three serious charges. The jury apparently disbelieved his testimony that he did not steal the truck and that he did not cut the victim with his box cutter. After reviewing all of the evidence presented throughout the trial, this Court cannot conclude that Kirby was *Page 12 
denied a fair trial. Nor can we conclude that the result of the trial would have been different absent the prosecutor's improper comments.
 {¶ 35} One other factor bears noting — the trial court's cautionary instructions. After the prosecutor commented on his belief about Kirby's guilt, the trial court stated that the prosecutor's opinion did not matter. Following Kirby's motion for a mistrial, the trial court instructed the jury that the prosecutor's statements about what he believed did not matter.
 {¶ 36} This Court's conclusion that Kirby received a fair trial should not be read to mean that we approve of the prosecutor's tactics. To the contrary, we concluded that the prosecutor's challenged comments were improper. In another case, the result could have been different. In this case, the strong evidence of guilt, the trial court's curative instructions, and the jury's acquittal on three counts compel us to conclude Kirby received a fair trial. We hope, however, that prosecutors remember their special responsibilities, as explained in Comment 1 to Rule 3.8 of the Ohio Rules of Professional Conduct:
 "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded justice and that guilt is decided upon the basis of sufficient evidence."
 {¶ 37} Kirby received a fair trial notwithstanding the prosecutor's improper comments. Therefore, Kirby's third assignment of error is overruled.
 III. {¶ 38} Kirby's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 13 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J. MOORE, J. CONCUR
[1] The prosecutor did not limit his comments just to closing argument. In response to Kirby's Crim. R. 29 motion at the close of the State's case-in-chief, the prosecutor argued that Kirby's silence following Miranda warnings "indicates at least in my mind some culpability." *Page 1