{¶ 20} I respectfully dissent.
 {¶ 21} Riffle asserts that the State effectively elicited and re-emphasized testimony that he invoked his rights to remain silent and to consult with an attorney in an effort to infer his guilt. Because Riffle failed to bring this issue to the attention of the trial court at a time when that court might have corrected it, he has forfeited the issue on appeal, except for a claim of plain error. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23. Crim. R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This Court has stated, however, that:
 "notice of plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. Therefore, this Court will not reverse the trial *Page 11 
court decision unless it has been established that the trial court outcome would have clearly been different but for the alleged error." (Internal citations omitted.) State v. Smith, 9th Dist. No. 22550, 2006-Ohio-158, at ¶ 5.
 {¶ 22} Before this Court may find that Riffle was deprived of a fair trial, we must find both that the prosecutor's conduct and comments were improper and that they prejudicially affected his substantial rights.State v. Kirby, 9th Dist. No. 23814, 2008-Ohio-3107, at ¶ 31. InKirby, we stated:
 "[I]t is not enough that there be sufficient other evidence to sustain a conviction in order to excuse the prosecution's improper remarks. Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty. In other words, not only must the prosecutor's remarks be improper, the defendant must show that the outcome of his trial would have been different absent the improper remarks." (Internal citations omitted.) Id.
 {¶ 23} As an initial matter, I do not believe that the prosecutor's comments were improper. In the case of Chief Sivard's and Ms. Bennett's testimony, the State did not expressly elicit testimony that Riffle invoked his rights to remain silent and to counsel. Rather, the prosecutor merely asked Chief Sivard where and how he interviewed Riffle regarding the allegations. The record is clear that Riffle agreed to an interview with the social services investigator. The prosecutor merely asked Ms. Bennett to discuss that interview, not whether Riffle had invoked his rights to remain silent and to counsel. Further, I believe that the prosecutor's comment during closing argument emphasized Riffle's voluntary comments to Ms. Bennett, rather than his silence. In fact, the prosecutor went so far as to characterize Riffle's questions to Ms. Bennett ("What will happen if this really happened? What if I did something?") as an admission. Based on the manner in which these comments were made, I do not believe that
 the prosecutor's conduct was improper. *Page 12 
 {¶ 24} Even assuming that the prosecutor elicited or made improper comments, defense counsel's conduct was far more egregious and prejudicial to Riffle than the State's. Not only did defense counsel fail to object to the alleged improper conduct and comments by the prosecutor, but defense counsel himself asked Chief Sivard the following during cross-examination:
 "Q. So he [Riffle] indicated that he didn't want to talk to you about this as far as you being a police chief and this being a criminal investigation, correct?
 "A. Correct.
 "Q. And you were aware that he had already consulted with an attorney about that, correct?
 "A. Correct.
 "Q. But he agreed to continue and talk with this — with Ms. Bennett from Job and Family Services, correct?
 "A. Correct.
 "Q. I mean, you excused yourself and then the conversation continued?"
From this line of questioning, it is clear that it was defense counsel himself who emphasized and re-emphasized that Riffle had invoked his rights to remain silent and to counsel, thereby "lessening] the sting of the prosecutor's improper comments." See Kirby at ¶ 32.
 {¶ 25} Finally, I disagree with the majority that "the evidence of guilt was not overwhelming in this case[.]" Rather, I believe that, based on the evidence elicited at trial from the victim, her mother and her counselor, that Riffle can not show "`that the outcome of his trial would have been different absent the improper remarks.'" Id. at ¶ 31, quoting State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303.
 {¶ 26} The victim testified cogently regarding the various incidents of abuse Riffle perpetrated upon her. The victim's mother's testimony presents a sound basis as to the circumstances leading to the victim's disclosure of Riffle's abuse. Finally, the child's counselor *Page 13 
Stacey Hancock, Ph.D., testified that she diagnosed her with posttraumatic stress disorder ("PTSD"), evidenced by the child's anxiety and various physiological responses during her "distressing recollection of [abusive] events." Dr. Hancock testified that the child disclosed all but one of the abusive incidents to which the child testified during their 30 sessions together. Dr. Hancock testified that in cases of PTSD it is common for patients to "have difficulty recalling the event, the memories come out very mixed up and jumbled, and they often don't want to recall the event." Nevertheless, Dr. Hancock's description of the abusive incidents was consistent with the child's testimony. Based on the evidence adduced at trial, I believe there is overwhelming evidence of Riffle's guilt. This is not the case where, but for the alleged error, the outcome clearly would have been different. See Smith
at ¶ 5. Accordingly, I would overrule his first assignment of error. *Page 1