[Cite as *State v. Colvin*, 2012-Ohio-4914.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26063 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANDRE COLVIN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 07 11 3884 (C) |

DECISION AND JOURNAL ENTRY

Dated: October 24, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Anthony Jackson was beaten to death by a group of men on Bachtel Avenue in Akron. The State charged Andre Colvin with murder, felony murder, and felonious assault. Following a trial, the jury convicted Mr. Colvin of felony murder and felonious assault, but acquitted him of purposeful murder. Mr. Colvin has appealed. This Court affirms because Mr. Colvin was not entitled to jury instructions on the lesser-included offenses of reckless homicide and assault, the evidence was sufficient to support his convictions, and an isolated improper comment by the prosecutor during closing argument was not plain error.

BACKGROUND

{¶2} Anthony Jackson was beaten to death in the street outside an after-hours house in Akron where he and a friend had been celebrating Mr. Jackson's thirty-second birthday. The evidence presented at trial indicated that Mr. Jackson's friend, Lamar Stallings, became involved

in a physical fight with a woman named Donielle Leondra Turner after Mr. Stallings spilled a drink on her at the bar. When Ms. Turner's boyfriend became involved in defense of Ms. Turner, Mr. Jackson became involved in defense of Mr. Stallings. There was some evidence that someone may have called a friend for help with the dispute. Within a short time, two cars pulled up, blocking the street in front of the after-hours house. Several men jumped out of the cars and began fighting Mr. Stallings and Mr. Jackson. Mr. Stallings ran from the scene, and the men turned their attention to Mr. Jackson.

{¶3} According to witnesses, Mr. Colvin was one of the men who jumped from the cars that pulled up and blocked the street. All of the witnesses testified that they saw a group of men attacking a man who was lying in the street. Four witnesses identified Mr. Colvin as a participant in the attack. One said she saw Mr. Colvin kicking Mr. Jackson. Another witness said she saw Mr. Colvin stomping on Mr. Jackson. The medical examiner testified that Mr. Jackson died of brain swelling and herniation caused by blunt force trauma to the head. He also testified that some of the injuries were likely inflicted after Mr. Jackson had become comatose.

## SUFFICIENCY OF THE EVIDENCE

{¶4} Mr. Colvin's second assignment of error is that the trial court incorrectly denied his motion for judgment of acquittal under Rule 29 of the Ohio Rules of Criminal Procedure. Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to

the prosecution, it could have convinced the average finder of fact of Mr. Colvin's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶5} Mr. Colvin has argued that there was insufficient evidence to support his convictions for felony murder and felonious assault. Under Section 2903.02(B), "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ." The predicate offense of violence in this case was a second-degree charge of felonious assault under Section 2903.11(A)(1) of the Ohio Revised Code. That section provides that "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶6} Mr. Colvin has argued that the evidence showed he was present at the scene of Mr. Jackson's death, but it was insufficient to show that he caused him serious physical harm or that he caused his death. His argument is based on the fact that none of the witnesses who testified that Mr. Colvin was among the men kicking and stomping on Mr. Jackson were able to identify what part of Mr. Jackson's body was struck by the blows Mr. Colvin delivered. Because there was no testimony that Mr. Colvin struck Mr. Jackson's head, Mr. Colvin has argued that there was not sufficient evidence to convict him of felony murder and felonious assault.

{¶7} George Sterbenz, the medical examiner who conducted the autopsy, testified that Mr. Jackson did not have obvious injuries over his torso and extremities. He did have a number of bruises and scrapes concentrated in the area of his face and head. Dr. Sterbenz noted a broken nose, tears inside the mouth, bruising in the deep muscle of the tongue, and "extensive" deep

facial contusions. He said that Mr. Jackson died of multiple blows to the head, which resulted in concussive injuries to the brain, which caused bleeding and swelling of the brain. He showed images of large areas of bruising on Mr. Jackson's scalp and down into the surface of the bone indicating "multiple impacts overlapping each other . . . dozens, dozens of impacts to Mr. Jackson's head." The doctor explained that the bruising was quite deep and extensive over the upper shoulders approaching the neck, but diminished below the shoulders.

{¶8} Four people testified that Mr. Colvin participated in the attack of Mr. Jackson. Lanetta Reed testified that she saw Mr. Colvin running over to join the group of people "kicking and stomping and hitting" Mr. Jackson while he was on the ground. Kendra Horton testified that she was involved in the fight outside the after-hours house. She said that she saw a group of ten to fifteen people kicking and hitting a person on the ground in the street. She admitted that she ran up to the group and kicked the person on the ground once or twice even though she did not know the identity of the victim. She said that a crowd of people were kicking and hitting the man with fists and shoes. She identified Mr. Colvin as one of the men who was attacking the victim. Ms. Horton also testified that Mr. Colvin drove her from the scene when the crowd dispersed.

{¶9} Delicia Davis testified that she saw Mr. Colvin jump out of one of the two cars that pulled up after the fight began. She said that Mr. Colvin shot a gun, causing her to run back inside the house and hide in an upstairs closet. When she came out of the closet and looked out the window, she saw Mr. Jackson on the ground "getting stomped on by a lot of people." She said that the group of people propped Mr. Jackson up a couple of times in order to kick him again. Ms. Davis testified that she saw Mr. Colvin kicking Mr. Jackson while he was on the ground. Chantel Dortch also testified that Mr. Colvin arrived in one of the two cars that pulled

up and blocked the street after the fight began. She said that Mr. Colvin was one of five or six men who stomped on Mr. Jackson while he was on the ground.

{¶10} Mr. Colvin has pointed out that none of these witnesses claimed to be sober at the time of the attack and several admitted to being high as well as drunk. Mr. Colvin's argument in this regard goes to the weight of the evidence rather than its sufficiency.

## Felonious Assault

{¶11} For a conviction of felonious assault, the State had to present sufficient evidence that Mr. Colvin "knowingly . . . [c]ause[d] serious physical harm to another . . . ." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). In this case, the State presented evidence that, if believed, was sufficient to allow a reasonable juror to conclude beyond a reasonable doubt that Mr. Colvin struck Mr. Jackson in a manner that he was aware would probably cause serious physical harm and it did in fact cause Mr. Jackson serious physical harm. Therefore, there was sufficient evidence to support Mr. Colvin's conviction of felonious assault.

## Felony Murder

{¶12} Mr. Colvin was acquitted of purposely causing Mr. Jackson's death. He was convicted of "caus[ing] the death of another as a proximate result of . . . committing or attempting to commit [felonious assault] . . . ." R.C. 2903.02(B). In regard to felony murder, the question is whether the State presented sufficient evidence that a reasonable juror could conclude that Mr. Colvin had caused Mr. Jackson's death "as a proximate result" of committing or attempting to commit felonious assault. R.C. 2903.02(B). According to the medical examiner,

there is no way to tell which of more than three dozen blows to the head caused Mr. Jackson's death. Mr. Colvin's primary argument is that there is not sufficient evidence to convict him of felony murder because there is no evidence that he struck Mr. Jackson in the head as opposed to some other part of his body.

{¶13} "The very purpose of the felony murder doctrine is to utilize the underlying felony as a substitute for the defendant's murderous intent and thereby raise an unintentional killing to the level of murder." *State v. Mays*, 2d Dist. No. 24168, 2012-Ohio-838, ¶ 6 (quoting *People v. Cahill*, 809 N.E.2d 561, 590 (N.Y. 2003)). "[D]eath is the 'proximate result' of [a] [d]efendant's conduct in committing the underlying felony offense . . . [if it is] a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience." *State v. Rodrigues*, 9th Dist. No. 11CA009971, 2012-Ohio-535, ¶ 10 (quoting *State v. Chapman*, 190 Ohio App. 3d 528, 2010–Ohio–5924, ¶ 24 (9th Dist.)). "Under the 'proximate cause theory,' it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A] [d]efendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of Defendant's conduct in committing the underlying felony offense . . . ." *State v. Mills*, 5th Dist. No. 10CA119, 2011-Ohio-5793, ¶ 36 (quoting *State v. Dykas*, 185 Ohio App. 3d 763, 2010-Ohio-359, ¶ 27).

{¶14} Mr. Colvin can be held criminally responsible for Mr. Jackson's death under Ohio's felony murder statute without proof that he dealt the death blow to Mr. Jackson or even that he struck Mr. Jackson's head while allegedly kicking, stomping, and/or punching him. Mr.

Jackson's death was a reasonably foreseeable consequence of participating in the felonious assault, regardless of who delivered the final blow that caused Mr. Jackson's death. The State presented sufficient evidence that Mr. Jackson's death was the proximate result of Mr. Colvin, in concert with a group of people, committing felonious assault. Therefore, the evidence is sufficient to support Mr. Colvin's convictions for felony murder and felonious assault. His second assignment of error is overruled.

JURY INSTRUCTIONS

{¶15} Mr. Colvin's first assignment of error is that his trial lawyer was ineffective for failing to request jury instructions on the lesser-included offenses of assault and reckless homicide. Even if such instructions would have been appropriate based on the facts of the case, a "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Griffie*, 74 Ohio St. 3d 332, 333 (1996). Although there is risk involved in not requesting an instruction on a lesser-included offense when the evidence supports it, the pay-off can also be substantial, that is, acquittal if the strategy prevails. Mr. Colvin's lawyer was not ineffective for failing to request jury instructions on lesser-included offenses.

{¶16} Mr. Colvin has alternatively argued that, despite his lawyer's failure to object to the absence of such instructions, the trial court's failure to give the jury instructions for assault and reckless homicide was plain error. Because Mr. Colvin's lawyer did not object to the trial court's failure to give the instructions before the jury retired, he is limited to arguing plain error on appeal. *State v. Lynn*, 129 Ohio St. 3d 146, 2011-Ohio-2722, ¶ 12; Crim. R. 30(A). "[N]otice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and

only to prevent a manifest miscarriage of justice." *State v. Clayton*, 62 Ohio St. 2d 45, 47 (1980) (quoting *State v. Long*, 53 Ohio St. 2d 91, paragraph three of the syllabus (1978)).

**{¶17}** Reckless homicide is a lesser included offense of felony murder. *State v. Alston*, 9th Dist. No. 05CA008769, 2006-Ohio-4152, ¶ 48. Assault is a lesser included offense of felonious assault. *State v. Cruz*, 9th Dist. No. 03CA0031-M, 2003-Ohio-4782, ¶ 21. "Even though an offense may be a lesser included offense, a charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.'" *State v. Trimble*, 122 Ohio St. 3d 297, 2009-Ohio-2961, ¶ 192 (quoting *State v. Thomas*, 40 Ohio St. 3d 213, paragraph two of the syllabus (1988)). In deciding whether to instruct the jury on a lesser-included offense, the trial court must view the evidence in a light most favorable to the defendant. *Id.* "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense." *Id.* "Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" *Id.* (quoting *State v. Shane*, 63 Ohio St. 3d 630, 632-33 (1992)).

**{¶18}** Mr. Colvin has argued that he was entitled to instructions on reckless homicide and assault because, based on the lack of evidence regarding which part of Mr. Jackson's body was impacted by the blows delivered by Mr. Colvin, the jury could have found that Mr. Colvin caused or attempted to cause Mr. Jackson some harm, as required to support a conviction for assault, but did not cause him serious physical harm, as required for a conviction of felonious assault. On that basis, Mr. Colvin has argued, the jury could have found him guilty of assault and recklessly causing the death, but not guilty of felony murder and felonious assault.

{¶19} Mr. Colvin was not entitled to a reckless homicide instruction because there is no reasonable view of the evidence that would have allowed the jury to reject the felony murder charge. Similarly, he was not entitled to an assault instruction because there is no reasonable view of the evidence that would have allowed the jury to reject the felonious assault charge. Four people testified that Mr. Colvin participated in beating a man to death while that man was incapacitated in the street. One witness testified that all of the participants seemed equally vicious in their attack. None of the witnesses testified that Mr. Colvin was not participating in the attack.

{¶20} The jurors received a complicity instruction allowing them to find Mr. Colvin guilty of felony murder and felonious assault if they found that he aided or abetted another in the commission of those crimes. *See* R.C. 2923.03(A)(2). The trial court explained to the jury that aided or abetted "means supported, assisted, encouraged, cooperated with, advised or incited." Regardless of where Mr. Colvin struck Mr. Jackson, there is no reasonable view of the evidence that would have permitted a jury to conclude that Mr. Colvin was not at least aiding and abetting the group of men who continued to prop Mr. Jackson up and kick, stomp, and punch him even after he lost consciousness. And there is no reasonable view of the evidence that would have allowed the jury to conclude that Mr. Jackson's death was not the proximate result of that beating. Because no reasonable view of the evidence supported acquittal on the higher charges, jury instructions for the lesser-included offenses of assault and reckless homicide were not required under the facts of this case. *See State v. Trimble*, 122 Ohio St. 3d 297, 2009-Ohio-2961, ¶ 192. Mr. Colvin's first assignment of error is overruled.

PROSECUTORIAL MISCONDUCT

{¶21} Mr. Colvin's third assignment of error is that the prosecutor engaged in misconduct that deprived him of a fair trial. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Lollis*, 9th Dist. No. 24826, 2010–Ohio–4457, ¶ 16 (quoting *State v. Diar*, 120 Ohio St. 3d 460, 2008–Ohio–6266, ¶ 140). Because Mr. Colvin's lawyer did not object to the prosecutor's comments at the time, he is limited to arguing plain error on appeal. *State v. Veal*, 9th Dist. No. 26005, 2012-Ohio-3555, ¶ 18 (citing *State v. Smith*, 97 Ohio St. 3d 367, 2002-Ohio-6659, ¶ 45). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Id.* (citing *State v. Kobelka*, 9th Dist. No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001)).

{¶22} Mr. Colvin has argued that, during closing argument, the prosecutor repeatedly presented his own opinion and made statements contrary to the law. After quoting some of the closing argument, Mr. Colvin argued that the quotations demonstrate that the prosecutor "consistently and repeatedly offered his opinion regarding the evidence, what was important [to] the State and what the State cares about. He also offer[ed] his opinion regarding the credibility of the witnesses – and 'the air of credibility' of one witness[.]" If Mr. Colvin believes that some part of the quoted material contains misstatements of law, he has not pointed out what those statements are or how they are incorrect. As part of a discussion of the complicity instruction, the prosecutor told the jury that "we don't care who had the gun" and that it did not matter how many times Mr. Colvin kicked Mr. Jackson because the evidence showed that he participated in

the beating. Mr. Colvin did not make any argument to explain why he quoted certain passages from the State's closing argument, so it is unclear from the brief what Mr. Colvin believes is improper about the quoted comments.

{¶23} Part of Mr. Colvin's argument is that, during closing argument, the prosecutor improperly commented on the credibility of a witness. *See State v. Kirby*, 9th Dist. No. 23814, 2008-Ohio-3107, ¶ 23 (citing *State v. Smith*, 14 Ohio St. 3d 13, 14 (1984)). Although a prosecutor is entitled to some latitude in closing, he "may not invade the realm of the jury by, for example, stating [his] personal beliefs regarding guilt and credibility, or alluding to matters outside the record." *State v. Baker*, 159 Ohio App. 3d 462, 2005-Ohio-45, ¶ 19 (2d Dist.). A prosecutor, however, is permitted to "comment freely on 'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *Id.* (quoting *State v. Lott*, 51 Ohio St. 3d 160, 165 (1990)). In this case, the prosecutor told the jury that Lanetta Reed's testimony had "an air of credibility" because, although she voluntarily approached police with information about Mr. Colvin's involvement in the beating of Mr. Jackson in hopes of getting a deal on charges then pending against her, she testified against Mr. Colvin even though she did not get the deal she wanted. This comment falls into the category of describing what the evidence showed as opposed to an expression of the prosecutor's personal belief about the credibility of a witness. Therefore, the comment about Ms. Reed's testimony was not improper.

{¶24} Mr. Colvin has also argued that the prosecutor acted improperly by telling the jury that Mr. Colvin had "almost confessed" to the police when they first spoke with him about his involvement in Mr. Jackson's death. During rebuttal closing argument, the prosecutor told the jury that "[Mr. Colvin] almost confessed, he told detective Morrison, 'you know what you know, I don't need to tell you.' And that was after [the officer] told him . . . that people [had] said [he

was] involved." Detective Morrison testified that, when he first talked to Mr. Colvin, he told him that people said Mr. Colvin was present during the beating of Mr. Jackson and that he would show Mr. Colvin's picture to the witnesses. According to Detective Morrison, Mr. Colvin responded by telling him, "I was not there and . . . no one is going to pick me out in any photos." Mr. Colvin has correctly argued that the prosecutor mischaracterized the detective's testimony by telling the jury that Mr. Colvin "almost confessed" to the officer.

{¶25} "The touchstone of the analysis [regarding prosecutorial misconduct] 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Lollis*, 9th Dist. No. 24826, 2010-Ohio-4457, ¶ 16 (quoting *State v. Diar*, 120 Ohio St. 3d 460, 2008-Ohio-6266, ¶ 140). In this case, the prosecutor's comment was improper, but it did not affect Mr. Colvin's substantial rights. It was an isolated comment that was not repeated. Further, given the fact that multiple witnesses, including an accomplice, testified that Mr. Colvin participated in the beating death of Mr. Jackson, it is not clear that the outcome of the trial would have been different in the absence of this one comment from the prosecutor. *See State v. Veal*, 9th Dist. No. 26005, 2012-Ohio-3555, ¶ 18 ("[T]he decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error.") (citing *State v. Kobelka*, 9th Dist. No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001)). Mr. Colvin's third assignment of error is overruled.

## CONCLUSION

{¶26} Mr. Colvin's first assignment of error is overruled because he was not entitled to jury instructions regarding assault and reckless homicide. His second assignment of error is overruled because the evidence is sufficient to support his convictions. His third assignment of

error is overruled because the prosecutor's isolated improper comment during closing argument was not plain error. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURRING.

{¶27} I concur with respect to Colvin's first assignment of error, but write separately to address a point of concern. Although I agree that we must review for plain error Colvin's argument that the trial court erred by not instructing the jury on lesser-included offenses, I note that this issue easily could have been resolved at the trial court level. Specifically, the trial court

need only have asked Colvin if he wanted instructions on lesser-included offenses.  A court's obligation to instruct on a lesser-included offense when the evidence supports the instruction "in no way affected defendant's concomitant right, through his counsel, to waive the instruction." *State v. Clayton*, 62 Ohio St.2d 45, 47 (1980), fn. 2.  If a defendant intentionally and voluntarily foregoes a lesser-included offense instruction, he waives the instruction and may not later claim that the trial court erred by failing to give it.  *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, ¶ 7.  Accordingly, as a matter of practice, a trial court can foreclose later argument about lesser-included offense instructions by simply asking the parties about the propriety of such instructions.

BELFANCE, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶28}** I concur in the majority's judgment.  I disagree, however, that the prosecutor's statement that a witness's testimony had an "air of credibility[]" was not improper.  Nevertheless, given the facts of this case, I would conclude that the statement did not prejudice Mr. Colvin.

**{¶29}** Furthermore, I do not join the majority to the extent that it suggests, in citing *State v. Mills*, 5th Dist. No. 10CA119, 2011-Ohio-5793, that "proximate cause" and "proximate result" are synonymous.

<u>APPEARANCES:</u>

JANA DELOACH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.