[Cite as *State v. Gorbe*, 2017-Ohio-4210.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 15CA0067-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| M.G. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 15CR0010 |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2017

HENSAL, Presiding Judge.

{¶1} Defendant-Appellant, M.G., appeals his conviction for domestic violence from the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} This appeal stems from a domestic violence case with heavily disputed facts. There is no dispute, however, that M.G. ("Husband") and K.G. ("Wife") were married at all relevant times, that Wife was pregnant, and that Husband knew Wife was pregnant.

{¶3} According to Wife, she and Husband had a physical fight the day before Thanksgiving. The next day, the fighting continued. Wife testified that Husband shoved her and bent her leg over the back of a couch before she left for work. After working her shift at a hospital, Wife returned to their apartment. Upon arriving home, Wife noticed that the computer was open and that the search history contained visits to dating websites. Upset by what she found, Wife got into her car with the intention of driving to her parents' house. Husband arrived

home as Wife was in her car preparing to leave. He forced her car window down, grabbed her keys from the ignition, and convinced her to come inside to talk about it.

{¶4} After entering the apartment, Husband handed Wife his cell phone and invited her to search through it. Wife observed that the only messages contained in his phone were from herself and from Husband's mother. As she was holding the phone, however, a text message came through from another woman. Wife called the number, and Husband immediately tried to take his phone back from her. Wife testified that Husband then dragged her onto the floor and sat on her pelvic region as he struggled to take his phone away from her. After she let go of the phone, Wife swung at him, striking his nose. Wife then got up to try to leave, but Husband knocked her back down, held her by her hair, and smacked her several times. He then began dragging her down the hallway toward their bedroom.

{¶5} As Husband was dragging Wife toward the bedroom, Wife grabbed a lamp cord and swung the lamp at Husband's back, causing parts of the lamp to shatter. Once in the bedroom, Husband told Wife he was going to kill her and choked her three times, causing her to lose consciousness for a short period of time. When Wife awoke, she called 911 and the violence ceased.

{¶6} Husband's version of the events is drastically different. According to Husband, he and Wife argued the day before Thanksgiving, but it never became physical. He testified that they had sex the following morning, and that Wife left for work shortly thereafter. He further testified that when he arrived home that evening, Wife was already inside of the apartment. When he entered, Wife approached him as if coming to give him a hug, but then punched him in the nose and accused him of cheating. He called her a name and then went to their bedroom to change his clothes. When he emerged from the bedroom, he saw Wife on his phone and tried to

take it away from her. He testified that she started swinging at him, so he grabbed her arms. After Wife bit his hand, he released her, but she started swinging at him again. At one point, Husband grabbed Wife's wrists, and they both fell over the couch onto the ground, at which point he held her down to stop her from hitting him. He then picked her up, walked her to the bedroom, told her to "cool off[,]" and exited the bedroom. Wife followed him out of the bedroom, picked up a lamp, and smashed it over the back of his neck. He then picked her up again and took her back to the bedroom. Wife called the police shortly thereafter.

{¶7} Two police officers responded to the scene. One officer testified that he found Wife in the bedroom crying and violently shaking, and that he observed red marks on her body. He testified that Husband told him that there had been a fight about a dating website and that Wife swung at him. When he asked Husband if he had ever threatened to kill Wife or their unborn child, Husband paused and then responded: "Not today, but I did yesterday when we were arguing."

{¶8} The other officer testified that Husband informed him that he had a mental condition and that he had not been taking his medication regularly. During his direct examination, Husband described his mental condition as having mood swings. That officer further testified that he observed red marks around Wife's chest and neck that were consistent with being choked. Both officers testified that although pictures were taken of Wife's injuries, those pictures were of ill quality and did not accurately reflect the extent of the injuries that they observed in person.

{¶9} The officers arrested Husband, who was subsequently charged with one count of domestic violence under Revised Code Section 2919.25(A). Husband pleaded not guilty, and the case proceeded to a jury trial. The jury returned a verdict of guilty, and the trial court sentenced

Husband to a nine-month prison term. Husband now appeals, raising three assignments of error for our review. For ease of consideration, we will address his assignments of error out of order.

II.

ASSIGNMENT OF ERROR I

DID THE PROSECUTOR'S CLOSING ARGUMENT RISE TO THE LEVEL OF PROSECUTORIAL MISCONDUCT THEREBY DEPRIVING [M.G.] OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶10} In his first assignment of error, Husband argues that the prosecutor's comments during closing argument deprived him of a fair trial. More specifically, Husband argues that the prosecutor engaged in prosecutorial misconduct by commenting on Husband's lack of credibility. He also argues that the prosecutor impermissibly bolstered the credibility of the State's witnesses.

{¶11} Husband concedes that, because his counsel did not object to the prosecutor's allegedly improper statements at trial, he is limited to arguing plain error on appeal. Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *State v. Veal*, 9th Dist. Summit No. 26005, 2012-Ohio-3555, ¶ 18 ("[W]hen the defendant fails to object to the purported acts of prosecutorial misconduct, he limits appellate review to that of plain error."). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Id.*

{¶12} "To evaluate a claim of prosecutorial misconduct in closing argument, this Court first decides whether the prosecutor's remarks were improper and, if so, whether the remarks

prejudicially affected the defendant's substantial rights." *State v. Kirby*, 9th Dist. Summit No. 23814, 2008-Ohio-3107, ¶ 23. In this regard, we "consider the trial record as a whole to determine whether [a defendant] received a fair trial rather than focus on the culpability of the prosecutor." *Id.*

{¶13} As this Court has stated, "[d]uring closing argument, a prosecutor may not express his personal belief or opinion as to the credibility of a witness. Likewise, the prosecutor may not express his opinion as to the guilt of the defendant." *Id.* (Internal citation omitted.) "A prosecutor, however, is permitted to comment freely on what the evidence has shown and what reasonable inferences may be drawn therefrom." (Internal quotations and citations omitted.) *State v. Colvin*, 9th Dist. Summit No. 26063, 2012-Ohio-4914, ¶ 23.

{¶14} Husband argues that the following comments made by the prosecutor regarding Husband's lack of credibility amounted to prosecutorial misconduct: (1) "That's his story after he hears all of the evidence."; (2) "so now he has to come up with a story and Ladies and Gentlemen, sometimes when you've got to come up with a story it's like fitting a square peg in a round hole"; (3) "Apply the truthfulness that you do in your daily lives. You wouldn't buy that [story] in your daily lives, Ladies and Gentleman, I suggest you don't have to."; (4) "I'm not so sure, Ladies and Gentleman, the State is arguing, that's not very believable."; (5) "It's tough to keep your story straight."; (6) "the little mouse trap he got himself in."; (7) "I suggest to you Ladies and Gentlemen, that doesn't make sense. That is not reasonable testimony. It's not often you get someone to be under oath right here in front of you and catch you in those type of things"; (8) "You have to ask yourself are you willing to accept those two stories that he told you? Do you think those were credible and reasonable? * * * We suggest they are not reasonable and reliable."; and (9) "We're not trying to get down and dirty here."

**{¶15}** Additionally, Husband argues that the prosecutor impermissibly bolstered the State's witnesses when he made the following statements: (1) "When people tell you things like that that don't serve them, I suggest to you, Ladies and Gentleman of the jury, that's her rendition of the truth * * *."; (2) "Now, listen to me, you saw the woman here. You saw how she was. Is she an academy award winning actress? How could she put on this performance with the police? Both those police, and these aren't guys who just got out of the police academy. These are guys that have 15 and 25 years of experience."; and (3) "Yeah, there are red marks there. Of course there's red marks there and by the way I've been doing this for 25 or 15 years and I'm under oath here and I'm telling you I saw the red marks * * * and those officers under oath were telling you that's what they saw, right, on this woman."

**{¶16}** Initially, we note that Husband's merit brief offers little explanation as to how these comments amounted to prosecutorial misconduct, and ignores the context in which many of the comments were made. For example, when discussing the presence of red marks on Wife's body, the prosecutor was summarizing the testimony of the police officers, not offering his own opinion as to whether Wife had red marks on her body. Additionally, the prosecutor's comment that the State was "not trying to get down and dirty" referred to the fact that Husband's counsel, not the prosecutor, brought up the issue of Husband and Wife's pending divorce case.

**{¶17}** Notwithstanding, assuming without deciding that the prosecutor's comments were improper, Husband has failed to demonstrate that but for the prosecutor's comments, the result of the trial clearly would have been different. Crim.R. 52(B); *Veal*, 9th Dist. Summit No. 26005, 2012-Ohio-3555, at ¶ 18. Considering the trial record as a whole, including the testimony of Wife – which was corroborated, in part, by the testimony of two responding police officers – we

cannot say that the prosecutor's comments deprived Husband of a fair trial. Husband's first assignment of error is overruled.

ASSIGNMENT OF ERROR III

[M.G.]'S CONVICTION IS BASED ON INSUFFICIENT EVIDENCE.

{¶18} In his third assignment of error, Husband argues that the State failed to present sufficient evidence to support his conviction for domestic violence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompki*ns, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶19} Revised Code Section 2919.25(A), under which Husband was convicted, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." It further provides that "if the offender knew that the victim of the violation was pregnant at the time of the violation, a violation of division (A) * * * of this section is a felony of the fifth degree, and the court shall impose a mandatory prison term * * *." R.C. 2919.25(D)(5). "Physical harm * * *" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶20} As previously noted, there is no dispute that Husband and Wife were married, that Wife was pregnant, and that Husband knew Wife was pregnant. Thus, the only issue that

remained was whether Husband "knowingly cause[d] or attempt[ed] to cause physical harm to [Wife]." R.C. 2919.25(A).

{¶21} The State presented evidence from Wife that, if believed, indicated that Husband dragged Wife through their apartment, struck her several times, and choked her. The State presented corroborating evidence from two police officers who testified that they observed red marks on Wife's body that were consistent with her version of the events. Viewing this evidence in a light most favorable to the State, we hold that a rational trier of fact could have found the essential elements of domestic violence proven beyond a reasonable doubt. *Jenks* at paragraph two of the syllabus. Husband's third assignment of error is overruled.

ASSIGNMENT OF ERROR II

[M.G.]'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In his second assignment of error, Husband argues that his conviction was against the manifest weight of the evidence. If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶23} Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

**{¶24}** The crux of Husband's argument is that the State presented multiple theories throughout trial, and that Wife's testimony was not credible. He also argues that the State failed to present medical records corroborating Wife's alleged injuries, that the police officers' testimony contradicted one another, and that the pictures of Wife's injuries introduced at trial did not reflect the injuries she complained of.

**{¶25}** As an initial matter, we note that the State was not required to present medical records, and that the police officers explained that the pictures of Wife's injuries were of ill quality and did not accurately reflect the injuries they observed in person. Further, as this Court has stated, "[c]redibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just,* 9th Dist. Wayne No. 12CA0002, 2012–Ohio–4094, ¶ 42, citing *State v. Violett,* 9th Dist. Medina No. 11CA0106–M, 2012–Ohio–2685, ¶ 11; *State v. Cross,* 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35, quoting *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004–Ohio–7184, ¶ 35.

**{¶26}** Here, the jury reviewed all of the evidence and assessed the credibility of the witnesses, including Wife, Husband, Husband's character witness, and the two police officers. Having reviewed the record, we cannot say that the jury clearly lost its way when it accepted the State's version of the events. *See State v. Knicely*, 9th Dist. Wayne No. 10CA0029, 2011-Ohio-4879, ¶ 20 ("[T]he fact that the jury chose to believe the State's version of the events is not a basis for reversal."). Husband's conviction, therefore, is not against the manifest weight of the evidence. Husband's second assignment of error is overruled.

## III.

**{¶27}** Husband's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

RUSSELL A. BUZZELLI, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and JAMES M. PRICE, Assistant Prosecuting Attorney, for Appellee.